IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RUTH ELIZABETH STONE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No.: 2:06-CV-302-SRW |
| K MART CORPORATION, and ABC... those persons, organizations, or businesses whose names are unknown at this time, | ) ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS**

COMES NOW defendant Kmart Corporation (hereinafter "Kmart"), by and through the undersigned counsel, and submits the following brief in support of its Motion to Dismiss, respectfully showing that all claims are due to be dismissed with prejudice.

I.  **THE PLAINTIFF'S CLAIMS ARE BARRED BY KMART'S PLAN OF REORGANIZATION, CONFIRMED BY THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION, IN CASE NUMBER 02-B-02474.**

The Complaint filed by plaintiff Ruth Elizabeth Stone in this case alleges that on or about April 1, 2002, defendant Kmart maliciously caused the plaintiff to be arrested and charged with theft of property. Complaint, ¶ 5, 9. Previously, on January 22, 2002, Kmart and certain of its affiliates filed voluntary petitions for relief under Chapter 11 of United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. On April 23, 2003 (the "Confirmation Date"), the bankruptcy court approved Kmart's First Amended Joint Plan of Reorganization ( "Reorganization Plan") and such plan became effective on May 6, 2003 (the "Effective Date").

Article 10.4 of Kmart's Reorganization Plan requires that all requests for payment of administrative claims, including those of any claimant who believes that it holds a claim against Kmart that arose during the Chapter 11 proceedings, between January 22, 2002 and May 6, 2003, be filed on or before June 20, 2003 (the "Bar Date"). This provision of the Reorganization Plan applies to personal injury claims. According to the provisions of the Reorganization Plan, a claimant's failure to file a request for payment of an administrative claim on or before the Bar Date precludes that claimant from obtaining any recovery from Kmart. A copy of the bankruptcy court's order approving the Reorganization Plan ("Confirmation Order") is attached hereto as Exhibit A.

Paragraphs 11 and 12 of the Confirmation Order (pp. 33-34) provide that confirmation of Kmart's Reorganization Plan operates as a discharge and injunction with respect to claims arising prior to the Plan's effective date, i.e. May 6, 2003. Pursuant to Section 1141 of the U.S. Bankruptcy Code, Article XII of the Reorganization Plan states that the distributions and rights provided under the Reorganization Plan are in complete satisfaction and discharge of all claims against Kmart arising prior to the effective date, May 6, 2003. Pursuant to Section 524 of the Bankruptcy Code, Article XII of the Reorganization Plan provides that such discharge operates as an injunction against the commencement or continuation of litigation on any such claims.

The incident made the basis of this suit, the plaintiff's arrest of a charge of theft of property, occurred on or about April 1, 2002. See Complaint, ¶¶ 5, 9. The charge against the plaintiff was nolle prosequi on February 23, 2004. Id. at ¶ 7. Nonetheless, the plaintiff's malicious prosecution claim is still governed by the provisions of Kmart's Reorganization Plan and is, therefore, due to be dismissed since she failed to file a request for payment of her administrative claim in the bankruptcy court prior to the Bar Date of June 20, 2003.

2

The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). A "claim,", in turn, has been defined by the Bankruptcy Code as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C. § 101 (5)(A). Furthermore, the Eleventh Circuit Court of Appeals and United States Supreme Court have concluded on more than one occasion that the term "claim" as defined in § 101(5) of the Bankruptcy Code is to be interpreted very broadly, with the Eleventh Circuit holding in *St. Laurent, II v. Ambrose* that "the legislative history of the Bankruptcy Code indicates that 'claim' was to be given the 'broadest possible definition.'" 991 F.2d 672, 678 (11th Cir. 1993); *see also Epstein v. Official Committee of Unsecured Creditors of the Estate of Piper Aircraft Corp.*, 58 F.3d 1573, 1576 (11th Cir. 1995); *F.C.C. v. NextWave Pers. Communications Inc.*, 537 U.S. 293, 302 (2003), *et al*. By interpreting § 101(5) in such a manner, the Courts have provided that "all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." *Epstein*, 58 F.3d at 1576.

The U.S. Bankruptcy Court's analysis of this definition in *In Re Amfesco Industries, Inc.*, 81 B.R. 777 (Bankr. E.D.N.Y. 1988) is relevant here. In that case, certain directors and former directors of the debtor corporation sought to claim, as an expense of administration, legal expenses for litigation that had been threatened against them, but not filed. Addressing the question whether or not the directors had a claim within the definitions of § 101, the court stated as follows:

> Contingent means "likely but not certain to happen." Webster's New Collegiate Dictionary 243 (1979). A contingent claim is therefore one in which some of the elements necessary to constitute a cause of action have not occurred, but are likely to occur in the not too distant future. Since 11 U.S.C. § 101(4) includes "claims" which are contingent, denial of a claim on the ground that one or more elements of

3

> a cause of action have yet to occur would render that portion of § 101(4) self-contradictory, meaningless, and inoperative. Such a construction is to be eschewed in favor one which is in accord with the underlying purpose of the statute. . . .
>
> Therefore, even though some of the elements necessary to constitute a cause of action have yet to occur, a "claim" may exist under federal bankruptcy law provided there is a reasonable likelihood there will occur with a reasonable time in the future those elements necessary to constitute a cause of action.

81 Bankr. at 781. The Bankruptcy Court in *In Re Amfesco* determined that the directors did, in fact, have a claim against the debtor's estate.

At the time of the Bar Date in the present case, the plaintiff's claim for malicious prosecution was contingent upon conclusion of the criminal prosecution in her favor. The final element necessary to constitute a cause of action for malicious prosecution had not occurred, but was likely to occur (provided that the plaintiff maintained her innocence) in the not too distant future. As in *In Re Amfesco*, even though one necessary element of a cause of action for malicious prosecution had yet to occur at the Effective Date, a "claim" already existed under federal bankruptcy law because there was a reasonable likelihood that all elements necessary to constitute the cause of action would occur within a reasonable time in the near future.[1]

In *In Re Mark J. Kaufman, P.A.*, 78 B.R. 309, 310 (Bankr. N.D. Fla. 1997) a bankruptcy court within the Eleventh Circuit likewise concluded that the automatic stay was applicable to circumstances where an alleged tort occurred pre-petition although actual damages giving rise to the cause of action did not accrue until post-petition. In that case, the debtor, Kaufman, had employed

---

[1] If the plaintiff were to contend either that the dismissal of the criminal charges brought against her was not reasonably likely to occur or that she was not innocent of the charges, such would be an admission that Kmart acted with probable cause in reporting the plaintiff to the police. Existence of probable cause for the arrest would therefore preclude the claim for malicious prosecution even if it had, in fact, arisen after the effective date.

4

claimant Hall to assist in handling a personal injury action for a third party. After Hall had done substantial work in representing the injured party and was to share in any recovery, Kaufman sought to have the injured party fire Hall. Hall filed a claim in Kaufman's Chapter 11 proceedings for tortious interference with a contractual business relationship, and he sought to have the automatic stay removed in order to liquidate his claim in state court. Hall contended that although the contractual relationship and the tortious interference had arisen prior to the debtor's bankruptcy petition, actual damages giving rise to the cause of action did not arise until post-petition and the automatic stay therefore was inapplicable. The court held that § 101(4)'s definition of "claim" includes contingent, unliquidated rights to payment and that the stay was applicable. *Id.*

Kmart shows further that while resolution of the criminal charge in the plaintiff's favor is a necessary element of a claim for malicious prosecution, other claims from the same incident, such as for abuse of process, false arrest or false imprisonment, could have been made immediately following the incident in April 2002. Assuming *arguendo* that claims such as the plaintiff's did not arise until the date the criminal prosecution was terminated, potential creditors in similar circumstances could avoid the jurisdiction of bankruptcy courts simply by selecting causes of action with one or more elements that would not occur until after the debtor's discharge. As the court noted in *In Re Amfesco*, such an interpretation would render essential provisions of the Bankruptcy Code meaningless and inoperative.

## II.    A STAY OF THIS LITIGATION ALREADY EXISTS, AND ANY ATTEMPT TO LIFT THE STAY MUST BE PURSUED IN THE BANKRUPTCY COURT.

As noted above, Paragraphs 11 and 12 of the Confirmation Order operate as a discharge and injunction with respect to claims against Kmart that arose prior to the Effective Date of May 6, 2003. That injunction is in place, and the plaintiff is presumed to have notice of it. Prosecution of this case

in the United States District Court for the Middle District of Alabama violates the bankruptcy court's injunction. However, the plaintiff has an opportunity to petition the bankruptcy court for relief from that injunction if she deems this District Court proper for the liquidation of her claim.

Kmart shows further that, although the district courts "retain jurisdiction to determine the applicability of the stay to litigation pending before them," the bankruptcy court is the proper forum for determining whether the automatic stay of 11 U.S.C. § 362 applies to a claim. *See NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 939 (6th Cir. 1986); *In re Baldwin-United Corp. Litigation*, 765 F. 2d 343, 346 (2nd Cir. 1985). It has been observed that allowing the district courts to determine the applicability of the stay would delay reorganization proceedings and lead to lack of uniformity, as numerous claims may exist against the debtor in many different district courts. *See In re Baldwin-United Corp.*, 765 F. 2d at 349. Furthermore, a request for relief from the stay directed to the district court is improper because "the court" referred to in 11 U.S.C. § 362(d) is the bankruptcy court, which has the debtor and all creditors before it. *United States v. LeBouf Brothers Towing Company*, 45 B.R. 887 (Bankr. E.D. La. 1985). As a result, the "bankruptcy court is the exclusive forum to consider a motion for relief from the automatic stay...." *Holland v. High Power Energy*, 248 B.R. 53, 56 (Bankr. S.D. W. Va. 2000); *see also Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990).

WHEREFORE, based upon the foregoing facts and authorities, the defendant respectfully shows that the claims of plaintiff Ruth Elizabeth Stone are due to be dismissed with prejudice.

/s/ Daniel P. Ogle
Mark S. Boardman (ASB-8572-B65M)
Daniel P. Ogle (ASB-7121-I71O)
BOARDMAN, CARR & HUTCHESON, P.C.
400 Boardman Drive
Chelsea, Alabama 35043-8211
Telephone: (205) 678-8000
Facsimile: (205) 678-0000

## CERTIFICATE OF SERVICE

I hereby certify that I have on this **10th** day of **April, 2006**, served a copy of the foregoing on counsel via facsimile and by mailing a copy of the same by United States Mail properly addressed and first class postage prepaid, to wit:

**Facsimile: (334) 263-4888**
Susan G. James, Esq.
Denise A. Simmons, Esq.
SUSAN G. JAMES & ASSOCIATES
600 South McDonough Street
Montgomery, Alabama 36104

_____
Of Counsel