EOD     APR 23 2003

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

In re:                                )     Case No. 02-B02474
                                       )     Jointly Administered
KMART CORPORATION, et al.,             )     Chapter 11
                                       )
                                       )     Hon. Susan Pierson Sonderby
       Debtors.                        )
                                       )

---

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER UNDER 11 U.S.C. §§ 1129(a) AND (b) AND FED. R. BANKR. P. 3020 CONFIRMING THE FIRST AMENDED JOINT PLAN OF REORGANIZATION OF KMART CORPORATION AND ITS AFFILIATED DEBTORS AND DEBTORS-IN-POSSESSION, AS MODIFIED

---

10827

Upon the motion, dated February 11, 2003 (the "Motion"), of Kmart Corporation ("Kmart") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for the entry of an order approving the Debtors' Disclosure Statement (as defined below); determining the treatment of certain claims for notice and voting purposes; establishing a record date for voting and solicitation purposes and procedures for filing objections to the First Amended Joint Plan of Reorganization of Kmart Corporation and Its Affiliated Debtors and Debtors-in-Possession (Docket No. 8384) (the "Original Plan")[2] and temporary allowance of claims for

---

[1]    The Debtors are the following entities: Kmart Corporation, Kmart Corporation of Illinois, Inc., Kmart of Indiana, Kmart of Pennsylvania LP, Kmart of North Carolina LLC, Kmart of Texas LP, Bluelight.com LLC, Big Beaver of Florida Development LLC, The Coolidge Group, n/k/a, TC Group I LLC, Kmart Michigan Property Services, L.L.C., Kmart Financing I, Troy CMBS Property, L.L.C., Big Beaver Development Corporation, Big Beaver of Guaynabo Development Corporation, Kmart International Services, Inc., Big Beaver of Caguas Development Corporation, Bluelight.com, Inc., Kmart Holdings, Inc., Kmart of Amsterdam, NY Distribution Center, Inc., Kmart Stores of Indiana, Inc., f/k/a Kmart Logistics Services, Inc., Kmart of Michigan, Inc., Kmart Stores of TCNP, Inc., f/k/a Kmart Trading Services, Inc., Kmart Overseas Corporation, JAF, Inc., VTA, Inc., Big Beaver of Caguas Development Corporation II, Big Beaver of Carolina Development Corporation, Kmart Pharmacies, Inc., Builders Square, Inc., and Sourcing & Technical Services Inc.

[2]    Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Original Plan. Any term used in the Original Plan or this order (the "Confirmation Order") that is not defined in the Original Plan or this Confirmation Order, but that is used in the United

(continued...)

voting purposes; and approving solicitation procedures for confirmation and seeking confirmation of the Plan (defined below); and based upon (i) the Court's review of the Trumbull Certificate of Publication, the Trumbull Affidavit of Mailing with Respect to Solicitation Materials (the "Trumbull Affidavit"), the Innisfree Affidavit of Mailing with Respect to Solicitation Materials (the "Innisfree Affidavit"), the Declaration of William R. Gruber, Jr., Certifying Tabulation of Ballots Regarding Vote on First Amended Joint Plan of Reorganization of Kmart Corporation and Its Affiliated Debtors and Debtors-in-Possession (the "Voting Report") (Undocketed), each filed on April 10, 2003, (ii) the Memorandum of Law in Support of Confirmation of the Original Plan as modified by the modifications set forth herein (the "Plan"), a copy of which is attached hereto as <u>Exhibit A</u>, filed by the Debtors on April 10, 2003, (iii) the Declarations of Julian C. Day (the "Day Declaration"), Ronald B. Hutchison (the "Hutchison Declaration"), Albert A. Koch (the "Koch Declaration"), Edward J. Stenger (the "Stenger Declaration"), Henry Miller (the "Miller Declaration"), and Michael Deighan (the "Deighan Declaration") and in support of Confirmation of the Plan filed by the Debtors on April 11, 2003, (iv) all of the evidence proffered or adduced at, objections filed in connection with, and

---

[2]   (...continued)
States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

arguments of counsel made at, the Confirmation Hearing (as defined below), and (v) the entire record of these Chapter 11 Cases; and after due deliberation thereon and good and sufficient cause appearing therefor, the Court hereby makes the following findings of fact and conclusions of law.[3]

## THE COURT FINDS AND CONCLUDES THAT:

A.     <u>Filing Of First Amended Plan</u>.  On February 26, 2003, the Debtors filed the Plan and the Disclosure Statement with Respect to First Amended Joint Plan of Reorganization of Kmart Corporation and Its Affiliated Debtors and Debtors-in-Possession (as transmitted to parties-in-interest, the "Disclosure Statement").

B.     <u>Solicitation Procedures Order</u>.  On February 25, 2003, the Court entered an order (the "Solicitation Procedures Order") that, among other things, (i) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3017, (ii) fixed April 14, 2003, as the date for the commencement of the hearing to consider confirmation of the Original Plan (the "Confirmation Hearing"), (iii) approved the form and method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"), and (iv) established certain procedures for soliciting and tabulating votes with respect to the Original Plan.

---

[3]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  <u>See</u> Fed. R. Bankr. P. 7052.

3

C.     Transmittal Of Solicitation Package.  The Confirmation Hearing Notice, the Disclosure Statement, the Original Plan, the Solicitation Procedures Order, the Financial Institutions' Committee's solicitation statement with respect to the Original Plan, the Unsecured Creditors' Committee's solicitation statement with respect to the Original Plan and, as to Classes 3, 4, 5, 6, 7, and 8 (collectively, the "Voting Classes"), a ballot and return envelope (such ballot and envelope being referred to as a "Ballot"), were transmitted in accordance with Fed. R. Bankr. P. 3017(d) and the Solicitation Procedures Order, all as set forth in the Trumbull Affidavit and Innisfree Affidavit.  In addition, as to Classes 10 and 11, the Notice of Nonvoting Status With Respect to Class 10 Subordinated Securities Claims and Class 11 Common Stock Interests as set forth in the Innisfree Affidavit, and as to Class 12, the Notice of Nonvoting Status With Respect to Class 12 Other Interests was transmitted, also as set forth in the Innisfree Affidavit.

D.     Publication Of Confirmation Hearing Notice.  The Debtors published the Confirmation Hearing Notice in The Wall Street Journal (National Edition), The New York Times (National Edition) and USA Today (National Edition) on March 7, 2003, as evidenced by the Affidavit by Trumbull Services Company, LLC, Regarding Publication.[4]

---

[4]     The full title of such pleadings is as follows:  Affidavit by Trumbull Services Company, LLC, Regarding Publication of Debtors' Notice of (1) Approval of
(continued...)

E.    <u>Voting Reports</u>. On April 11, 2003, the Debtors filed the Voting Report (Undocketed), certifying the method and results of the Ballot tabulation for each of the Voting Classes voting to accept or reject the Original Plan.

F.    <u>Bankruptcy Rule 3018(a) Stipulations</u>. Prior to the Confirmation Hearing, multiple motions were filed for temporary allowance of claims for voting purposes pursuant to Bankruptcy Rule 3018(a) (the "3018(a) Motions"). The 3018(a) Motions include:

> (a) Dorel Juvenile Group (Docket No. 9548); (b) Dorel Industries, Inc.-Ridgewood Industries (Docket No. 9550); (c) John L. Loflin (Docket No. 9578); (d) HSBC Bank USA (Docket No. 9626); (e) P.M.C. Associates, Inc. (Docket No. 9628); (f) HSBC Bank USA (Docket No. 9630); (g) SRK Broadway Associates LP (Docket No. 9632); (h) CRICKM San Jose Trust (Docket No. 9634); (i) Devon Lincoln Properties (Docket No. 9698); (j) Wells Fargo Bank Minnesota, N.A., as Trustee, through Orix Capital Markets, LLC (Docket Nos. 9700, 9702, and 9704); (k) LaSalle Bank, N.A., as Trustee, through Orix Capital Markets, LLC (Docket Nos. 9708, 9710, 9712, 9714, 9716 and 9718); (l) Wells Fargo Bank Minnesota, N.A., as Trustee, through Orix Capital Markets, LLC (Docket No. 9720); Kimco Realty Corporation (Docket No. 9721); (m) GMAC Commercial Mortgage Corporation (Docket Nos. 9724 and 9731 - 9788); (n) The Bank of New York and BNY Trust Company (Docket No. 9725); (o) Florida Tax Collectors (Docket No. 9730).

---

[4]    (...continued)
Disclosure Statement; (2) Hearing on Confirmation of Plan; (3) Deadline and Procedures for Filing Objections to Confirmation of Plan; (4) Deadline and Procedures for Temporary Allowance of Certain Claims for Voting Purposes; (5) Treatment of Certain Claims for Notice and Voting Purposes; (6) Record Date; and (7) Voting Deadline for Receipt of Ballots (Docket No. 9899).

In addition, several stipulations were filed with the Court pursuant to Bankruptcy Rule 3018(a) (the "3018(a) Stipulations") in which several Claim holders and the Debtors stipulated and the Court ordered that certain Claims be temporarily allowed for voting purposes only, each of which has been incorporated in the results set forth in the Voting Reports.

G.    Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)). The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

H.    Judicial Notice. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

I.    Transmittal And Mailing Of Materials; Notice. Due, adequate and sufficient notice of the Disclosure Statement and Plan and of the Confirmation Hearing, along with all deadlines for voting on or filing objections to the Plan, has

6

been given to all known holders of Claims in accordance with the procedures set forth in the Solicitation Procedures Order. The Disclosure Statement, Original Plan, Ballots, Solicitation Procedures Order, Confirmation Hearing Notice, Unimpaired Creditors Notice, Notice of Nonvoting Status, the Unsecured Creditors' Committee's solicitation statement with respect to the Original Plan, and the Financial Institution's Committee's solicitation statement with respect to the Original Plan were transmitted and served in substantial compliance with the Solicitation Procedures Order and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and the other bar dates and hearings described in the Solicitation Procedures Order was given in compliance with the Bankruptcy Rules and the Solicitation Procedures Order, and no other or further notice is or shall be required.

J.      Solicitation. Votes for acceptance or rejection of the Plan were solicited in good faith and complied with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Solicitation Procedures Order, all other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations.

K.      Ballots. All procedures used to distribute solicitation materials to the applicable holders of Claims and Interests and to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy

7

Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court for the Northern District of Illinois, Eastern Division and all other applicable rules, laws, and regulations.

L.     <u>Impaired Classes That Have Voted To Accept The Plan</u>. As evidenced by the Voting Reports, which certified both the method and results of the voting, pursuant to the requirements of sections 1124 and 1126 of the Bankruptcy Code, at least one Impaired Class of Claims, determined without including any acceptance by an insider of any of the Debtors, has voted to accept the Plan with respect to each Debtor.

M.     <u>Classes Deemed To Have Rejected The Plan</u>. Holders of Claims and Interests in Classes 10 and 11 are not entitled to receive any distribution under the Plan on account of their Claims and Interests unless Classes 3, 4, 5, 6, 7, and 8 vote to accept the Plan.  Holders of Interests in Class 12 are not entitled to receive any distribution under the Plan under any circumstance on account of their Interests. Since none of the holders of Claims and Interests in Class 10, Class 11, or Class 12 are unconditionally entitled to receive a distribution under the Plan, pursuant to Section 1126(g) of the Bankruptcy Code, each of such Classes is conclusively presumed to have rejected the Plan, and the votes of Claimholders and Interestholders in such Classes therefore will not be solicited.

8

N.    Burden Of Proof. The Debtors, as proponents of the Plan, have met

their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy

Code, by a preponderance of the evidence, which is the applicable evidentiary

standard in this Court. The Court also finds that the Debtors have satisfied the

elements of sections 1129(a) and (b) of the Bankruptcy Code under the clear and

convincing standard of proof.

O.    Plan Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(1)).

The Plan complies with the applicable provisions of the Bankruptcy Code, thereby

satisfying section 1129(a)(1) of the Bankruptcy Code.

1.    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). In
addition to Administrative Claims and Priority Tax Claims (which are not required to
be classified), Article III of the Plan designates between six (6) and ten (10) Classes
of Claims and two (2) Classes of Interests for each of the Debtors. The Claims and
Interests placed in each Class are substantially similar to other Claims or Interests in
each such Class. Valid business, factual and legal reasons exist for separately
classifying the various Classes of Claims and Interests created under the Plan, and
such Classes do not unfairly discriminate between holders of Claims or Interests.
Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.    Specification Of Unimpaired Classes (11 U.S.C.
§ 1123(a)(2)). Article 4.1 of the Plan specifies the Classes of Claims that are
Unimpaired. Thus, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

3.    Specification Of Treatment Of Impaired Classes (11 U.S.C. §
1123(a)(3)). Article 4.2 of the Plan specifies the Classes of Claims and Interests that
are Impaired under the Plan. Article V of the Plan specifies the treatment of Claims
and Interests in all such Classes. Thus, the Plan satisfies section 1123(a)(3) of the
Bankruptcy Code.

4.    No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan
provides for the same treatment by the relevant Debtor for each Claim in each

9

respective Class unless the holder of a particular Claim has agreed to less favorable treatment with respect to such Claim. Thus, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

5.    Implementation Of Plan (11 U.S.C. § 1123(a)(5)). The Plan provides adequate and proper means for implementation of the Plan, including, without limitation, (a) the continued corporate existence of the Debtors; (b) the corporate constituent documents that will govern New Holding Company, New Operating Company and the other Reorganized Debtors after the Effective Date; (c) entry into the Exit Financing Facility, the Investment Agreement, Registration Rights Agreement, and the Trade Vendors' Lien Program; (d) issuance of the New Holding Company Common Stock, New Holding Company Preferred Stock, New Operating Company Common Stock; and (e) the execution, delivery, filing or recording of all contracts, instruments, releases, indentures, and other agreements or documents related to the foregoing. Thus, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

6.    Prohibition Against Issuance Of Non-Voting Equity Securities And Provisions For Voting Power Of Classes Of Securities (11 U.S.C. § 1123(a)(6)). Article 7.4 of the Plan provides that the articles of incorporation of New Holding Company will prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code. Such statutory provisions have been incorporated into the articles of incorporation of New Holding Company, as set forth in Plan Exhibit A.

7.    Selection Of Officers, Directors And The Trustee (11 U.S.C. § 1123(a)(7)). In Article 7.5 and Article 7.6 of the Plan, as identified publicly prior to the Confirmation Hearing, or as otherwise announced at the Confirmation Hearing, the Debtors properly and adequately disclosed or otherwise identified the procedures for determining the identity and affiliations of all individuals or entities proposed to serve on or after the Effective Date as officers or directors of the Reorganized Debtors. The appointment or employment of such individuals or entities and the proposed compensation and indemnification arrangements for officers and directors are consistent with the interests of Claimholders and with public policy. Thus, section 1123(a)(7) of the Bankruptcy Code is satisfied.

8.    Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including, without limitation, provisions for (a) distributions to holders of Claims, (b) the disposition of executory contracts and unexpired leases,

10

(c) the retention of, and right to enforce, sue on, settle or compromise (or refuse to do any of the foregoing with respect to) certain claims or causes of action against third parties, to the extent not waived and released under the Plan, (d) resolution of Disputed Claims, (e) allowance of certain Claims, (f) indemnification obligations, (g) releases by the Debtors and Debtors-in-Possession, and (h) releases by holders of Claims and Interests.

9.     <u>Fed. R. Bankr. P. 3016(a)</u>. The Plan is dated and identifies the entities submitting it, thereby satisfying Fed. R. Bankr. P. 3016(a).

P.     <u>Debtors' Compliance With Bankruptcy Code (11 U.S.C.</u>

<u>§ 1129(a)(2))</u>. It appearing to the Court that the Debtors have complied with the

applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2)

of the Bankruptcy Code. Specifically, the Debtors are proper debtors under section

109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a)

of the Bankruptcy Code. The Debtors have complied with the applicable provisions

of the Bankruptcy Code, including as provided or permitted by orders of the Court.

The Debtors have complied with the applicable provisions of the Bankruptcy Code,

the Bankruptcy Rules, and the Solicitation Procedures Order in transmitting the Plan,

the Disclosure Statement, the Ballots and related documents and notices, and in

soliciting and tabulating votes on the Plan.

Q.     <u>Plan Proposed In Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors

have proposed the Plan in good faith and not by any means forbidden by law, thereby

satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan

has been proposed in good faith, the Court has examined the totality of the circum-

11

stances surrounding the filing of the Chapter 11 Cases and the formulation of the Plan. See Bankruptcy Rule 3020(b). The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate and honest purpose of reorganizing and maximizing the value of each of the Debtors and the recovery to Claimholders under the circumstances of these cases.

R.     Payments For Services Or Costs And Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, including all administrative expense and substantial contribution claims under sections 503 and 507 of the Bankruptcy Code, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code. Any amounts allocated by the Debtors for the payment of such services, costs and expenses, or any recoveries or disgorgements subsequently ordered by the Court on account of payments to professionals prior to final allowance of such amounts shall constitute assets owned exclusively by the Reorganized Debtors except as otherwise provided in Section 10.2(c) of the Plan.

S.     Directors, Officers, And Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code and have disclosed the initial officers of the Reorganized Debtors. The Debtors have disclosed

12

the manner for selection of the initial board of directors of New Holding Company. Specifically, the initial board of directors of New Holding Company shall consist of nine (9) directors. One (1) member of senior management of the Reorganized Debtors will serve on the initial board of directors of New Holding Company. Other board members shall include (i) four (4) directors selected by the Plan Investors, at least one of whom shall not be an officer or employee of the Plan Investors or a family member of any of the foregoing, (ii) two (2) directors selected by the Unsecured Creditors' Committee, and (iii) two (2) directors selected by the Financial Institutions' Committee, neither of which shall be an officer or employee of ESL Investments, Inc. or a family member thereof. In addition, members of the board of directors were designated by the respective designating parties in accordance with Article 7.5(b) of the Plan as follows: Plan Investors' Notice of Designation of Directors (Docket No. 9624) (entered on March 31, 2003); Official Unsecured Creditors' Committee's Notice of Designation of Individuals to Serve as Directors of New Holding Company (Docket No. 9636) (entered on March 31, 2003); Notice of Filing of Selections of Official Financial Institutions' Committee for the (1) Board of Directors of the Reorganized Debtors' New Holding Company, (2) Trust Advisory Board and (3) Post-Effective Date Committee (Undocketed). The existing senior officers and members of the boards of directors of each of the Affiliate Debtors other than New Holding Company shall continue to serve in their current capacities after

13

the Effective Date; provided, however, that New Holding Company reserves the right

to identify new officers and members of the board of directors of each such Affiliate

Debtors at any time thereafter.  On March 28, 2003, the Debtors filed Plan Exhibit L-

2 which describes Assumed Employee-Related Agreements, including various

employee compensation and benefit programs as well as severance and indemnifica-

tion agreements assumed by the Debtors.  Accordingly, because the Debtors have

fully disclosed compensation to be paid to management in the Plan Exhibit L-2, the

requirements of section 1129(a)(5) of the Bankruptcy Code have been met.

T.    No Rate Changes (11 U.S.C. § 1129(a)(6)).  Section 1129(a)(6) of the

Bankruptcy Code is satisfied because the Plan does not provide for any change in

rates over which a governmental regulatory commission has jurisdiction.

U.    Best Interests Test (11 U.S.C. § 1129(a)(7)).  The Plan satisfies

section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis in Appendix B

to the Disclosure Statement, the Koch Declaration, the Stenger Declaration and

evidence adduced at the Confirmation Hearing (1) are persuasive, credible and

accurate as of the dates such evidence was prepared, presented, or proffered,

(2) either have not been controverted by other persuasive evidence or have not been

challenged, (3) are based upon reasonable and sound assumptions, (4) provide a

reasonable estimate of the liquidation values of the Debtors upon conversion to a

case under chapter 7 of the Bankruptcy Code, and (5) establish that each holder of a

14

Claim or Interest in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

    V.    <u>Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(8))</u>.  On a substantively consolidated basis, all voting Impaired Classes have voted to accept the Plan.  On a Debtor by Debtor basis, the following classes have voted to reject the Plan:

> Class 5 creditors of the following Debtors:
> > Big Beaver of Caguas Development Corporation
> > Bluelight.com LLC
> > Builders Square, Inc.
> > Kmart of Michigan, Inc.
> > Kmart of Texas, LP
>
> Class 6 creditors of the following Debtors:
> > Big Beaver Development Corporation
> > Troy CMBS Property, LLC

Class 7 creditors of the following Debtors:
Big Beaver of Florida Development, LLC
KBL Holding, Inc.
Kmart of Michigan, Inc.
Kmart of North Carolina, LLC

Further, Classes 10, 11 and 12 are deemed to have rejected the Plan and, accordingly,

confirmation as to Kmart Corporation is sought pursuant to 11 U.S.C. § 1129(b).

W.    Treatment Of Administrative And Priority Tax Claims And Other

Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Claims

and Other Priority Claims under the Plan satisfies the requirements of section

1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax

Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the

Bankruptcy Code.

X.    Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10)). Each

Impaired Classes of Claims other than those listed in paragraph V above have voted

to accept the Plan and, to the best of the Debtors' knowledge, do not contain "insid-

ers." Thus, section 1129(a)(10) of the Bankruptcy Code is satisfied.

Y.    Feasibility (11 U.S.C. § 1129(a)(11)). The Plan satisfies section

1129(a)(11) of the Bankruptcy Code. The financial projections in Appendix C to the

Disclosure Statement, the Day Declaration, the Koch Declaration, the Miller Decla-

ration and evidence proffered or adduced at the Confirmation Hearing (i) are persua-

sive and credible, (ii) have not been controverted by other evidence or sufficiently

16

challenged in any of the objections to the Plan, and (iii) establish that the Plan is
feasible and that confirmation of the Plan is not likely to be followed by the liquida-
tion or the need for further financial reorganization of the Debtors or the Reorganized
Debtors.

Z.    Payment Of Fees (11 U.S.C. § 1129(a)(12)). The Debtors have paid
or, pursuant to Sections 1.2 and 2.1 of the Plan, will pay by the Effective Date fees
payable under 28 U.S.C. § 1930, thereby satisfying section 1129(a)(12) of the
Bankruptcy Code.

AA.    Continuation Of Retiree Benefits (11 U.S.C. § 1129(a)(13)). As
required by section 1129(a)(13) of the Bankruptcy Code, Section 7.7 of the Plan
provides that, following the Effective Date of the Plan, the payment of all retiree
benefits (as defined in section 1114 of the Bankruptcy Code) will continue at the
levels established pursuant to subsections (e)(1)(B) or (g) of section 1114 of the
Bankruptcy Code, at any time prior to the entry of this Confirmation Order, for the
duration of the periods the Debtors have obligated themselves to provide such
benefits, thereby satisfying section 1129(a)(13) of the Bankruptcy Code.

AB.    Section 1129(b)/Confirmation Of The Plan Over Nonacceptance Of
Impaired Classes. On a consolidated basis, all voting impaired Classes voted to
accept the Plan. On a Debtor by Debtor basis, all classes of impaired claims voted to
accept the Plan other than those Classes identified in paragraph V above. Pursuant to

17

section 1129(b) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that not all Impaired Classes have voted to accept the Plan. All of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8), with respect to such Classes, have been met. Specifically, on a consolidated basis, the only rejecting Classes are the Deemed Rejected Classes. With respect to the Deemed Rejecting Classes, no holders of Claims or Interests junior to the holders of such Classes will receive or retain any property under the Plan on account of such Claims or Interests, and, as evidenced by the uncontroverted valuations and estimates contained in the Disclosure Statement and put into evidence at the Confirmation Hearing, no Class of Claims or Interests senior to any such Classes is receiving more than full payment on account of such Claims or Interests. Section 1129(b) therefore is satisfied on a consolidated basis. Section 1129(b) is also satisfied on a de-consolidated basis. Specifically, Section 1129(b) is satisfied on a de-consolidated basis for the following reasons: (i) the Debtors are retaining their existing corporate structure under the Plan, including ownership interests by certain Debtors in the equity or stock of other Debtors, on account of new value in the form of, among other things, the new Exit Financing Facility, the investments to be made by the Plan Investors, and the greater value to be afforded to all creditors of all Debtors under the Plan in light of the substantive consolidation for distribution purposes, and (ii) the Existing Common Stock of Kmart Corporation and Other

18

Interests will be cancelled under the Plan. Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as required by section 1129(b) of the Bankruptcy Code.

AC.    Principal Purpose Of Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e).

AD.    Modifications To The Plan. The modifications to the Original Plan described and/or set forth beginning at paragraph 54 hereof constitute technical changes and/or changes with respect to particular Claims by agreement with holders of such Claims, and do not materially adversely affect or change the treatment of any Claims or Interests. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Original Plan.

AE.    Good Faith Solicitation (11 U.S.C. § 1125(e)). The Debtors and their agents, representatives, attorneys, and advisors have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Solicitation Procedures Order and are entitled to the protections afforded by

19

section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 12.8 of the Plan.

AF.     The Reorganized Debtors Will Not Be Insolvent Nor Left With Unreasonably Small Capital. As of the occurrence of the Effective Date and after taking into account the transactions contemplated by the Plan, on a consolidated basis (1) the fair saleable value of the property of the Reorganized Debtors will be not less than the amount that will be required to pay the probable liabilities on the Reorganized Debtors' then existing debts as they become absolute and matured considering all financing alternatives and potential asset sales reasonably available to the Reorganized Debtors and (2) the Reorganized Debtors' capital is not unreasonably small in relation to their business or any contemplated or undertaken transaction.

AG.     Executory Contracts. The Debtors have exercised reasonable business judgment in determining whether to assume or reject each of their executory contracts and unexpired leases as set forth in Article VIII of the Plan. Each assumption or rejection of an executory contract or unexpired lease pursuant to Article 8.1 of the Plan shall be legal, valid and binding upon the applicable Debtor or Reorganized Debtor and all non-Debtor parties to such executory contract or unexpired lease, all to the same extent as if such assumption or rejection had been effectuated pursuant to

20

an appropriate authorizing order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

AH.    Adequate Assurance.  The Debtors have cured, or provided adequate assurance that the Reorganized Debtors will cure, defaults (if any) under or relating to each of the Assumed Contracts and Leases which are being assumed by the Debtors pursuant to the Plan.

AI.    Releases And Discharges.  The releases and discharges of Claims and Causes of Action described in Article XII of the Plan constitute good faith compromises and settlements of the matters covered thereby.  Such compromises and settlements are made in exchange for consideration and are in the best interests of holders of Claims, are fair, equitable, reasonable, and are integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan. Each of the discharge, release, indemnification and exculpation provisions set forth in the Plan: (1) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d); (2) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (3) is an integral element of the transactions incorporated into the Plan; (4) confers material benefit on, and is in the best interest of, the Debtors, their estates and their creditors; (5) is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors, their organization,

21

capitalization, operation and reorganization; and (6) is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

AJ.    Conditions To Confirmation. The conditions to Confirmation set forth in Article 13.1 of the Plan have been satisfied, waived or will be satisfied by entry of this Confirmation Order.

AK.    Conditions To Consummation. Each of the conditions to the Effective Date, as set forth in Article 13.2 of the Plan, is reasonably likely to be satisfied. The conditions to the Effective Date, set forth in Article 13.2 of the Plan, shall be subject to waiver by the Debtors in their sole discretion, such waiver to be reasonably acceptable to the Plan Investors and the Statutory Committees, without any further notice to parties-in-interest or the Court and without a hearing.

AL.    Retention Of Jurisdiction. The Court properly may retain jurisdiction over the matters set forth in Article XIV of the Plan.

AM.    Agreements And Other Documents. The Debtors have made adequate and sufficient disclosure of: (1) the adoption of new or amended and restated certificates of incorporation and bylaws or similar constituent documents for the Reorganized Debtors; (2) the distributions to be made pursuant to the Plan; (3) the issuance for distribution, in accordance with the terms of the Plan, of the New Holding Company Common Stock; (4) the adoption, execution, delivery and implementation of all contracts, leases, instruments, releases and other agreements or

22

documents related to any of the foregoing; (5) the adoption, execution and imple-
mentation of employment and indemnification agreements, and other employee plans
and related agreements; and (6) the other matters provided for under the Plan
involving the corporate structure of the Reorganized Debtors.

AN.    Exit Financing Facility.  The Exit Financing Facility is an essential
element of the Plan and entry into the Exit Financing Facility is in the best interests
of the Debtors, their estates and their creditors.  The Debtors have exercised reason-
able business judgment in determining to enter into the Exit Financing Facility
Agreement on the terms and in the form set forth in Exhibit D-1 and Exhibit D-2 to
the Plan, or in a form substantially similar thereto.  The Debtors have provided
sufficient and adequate notice of the Exit Financing Facility, including any material
modifications to the Exit Financing Facility or to the commitment letter with respect
thereto, to all parties-in-interest, including, without limitation, the DIP Agent, the
Plan Investors and the Creditors' Committees.  It appearing to the Court that all
documents necessary to implement the Plan including, without limitation, the Exit
Financing Facility Agreement, shall, upon execution, be valid, binding, and enforce-
able agreements and not be in conflict with any federal or state law.

AO.    Investment Agreement.  The Investment Agreement is an essential
element of the Plan and entry into the Investment Agreement is in the best interests
of the Debtors, their estates and their creditors and is approved in all respects.  The

23

Debtors have exercised reasonable business judgment in determining to enter into the Investment Agreement on the terms and in the form set forth in Exhibit E to the Plan, or in a form substantially similar thereto. The Debtors have provided sufficient and adequate notice of the Investment Agreement, including any material modifications to the Investment Agreement, to all parties-in-interest, including, without limitation, the DIP Agent, the Plan Investors and the Creditors' Committees. Each Plan Investor has acted in good faith in connection with the Chapter 11 Cases and the formulation and confirmation of the Plan. It appearing to the Court that the Investment Agreement shall, upon the Effective Date, be valid, binding, and enforceable and shall not be in conflict with any federal or state law.

AP.     Registration Rights Agreement. The Registration Rights Agreement is an essential element of the Plan and entry into the Registration Rights Agreement is in the best interests of the Debtors, their estates and their creditors. The Debtors have exercised reasonable business judgment in determining to enter into the Registration Rights Agreement on the terms and in the form set forth in Exhibit G to the Plan, or in a form substantially similar thereto. The Debtors have provided sufficient and adequate notice of the Registration Rights Agreement, including any material modifications to the Registration Rights Agreement, to all parties-in-interest, including, without limitation, the DIP Agent, the Plan Investors and the Creditors' Committees. It appearing to the Court that the Registration Rights

24

Agreement shall, upon execution, be valid, binding, and enforceable and shall not be in conflict with any federal or state law.

AQ.    Kmart Creditor Trust. The Kmart Creditor Trust Agreement is an essential element of the Plan and entry into the Kmart Creditor Trust Agreement is in the best interests of the Debtors, their estates and their creditors. The Debtors have exercised reasonable business judgment in determining to enter into the Kmart Creditor Trust Agreement on the terms and in the form set forth in Exhibit K to the Plan, or in a form substantially similar thereto. The Debtors have provided sufficient and adequate notice of the Kmart Creditor Trust Agreement, including any material modifications to the Kmart Creditor Trust Agreement, to all parties-in-interest, including, without limitation, the DIP Agent, the Plan Investors and the Creditors' Committees. It appearing to the Court that the Kmart Creditor Trust Agreement shall, upon execution, be valid, binding, and enforceable and shall not be in conflict with any federal or state law.

AR.    Trade Vendor Lien Program. The Collateral Trust Agreement is an essential element of the Plan and entry into the Collateral Trust Agreement is in the best interests of the Debtors, their estates and their creditors. The Debtors have exercised reasonable business judgment in determining to enter into the Collateral Trust Agreement on the terms and in the form set forth in Exhibit J-2 to the Plan, or in a form substantially similar thereto. The Debtors have provided sufficient and

25

adequate notice of the Collateral Trust Agreement, including any material modifica-

tions to the Collateral Trust Agreement, to all parties-in-interest, including, without

limitation, the DIP Agent, the Plan Investors and the Creditors' Committees. It

appearing to the Court that the Collateral Trust Agreement shall, upon execution, be

valid, binding, and enforceable and shall not be in conflict with any federal or state

law.

      AS.    <u>Distributions of New Holding Company Common Stock</u>. Each

payment of New Holding Company Common Stock in respect of a Claim will be

made on behalf of the respective Debtor against which such Claim is held.

The New Holding Company Common Stock to be distributed under the Plan is

personal property incident to the recovery of real property and therefore qualifies as

'foreclosure property' pursuant to 26 U.S.C § 856(c). Any distributions of New

Holding Company Common Stock as contemplated by the Plan by the Debtors and

by the Trustees (as defined in subparagraph (i) below) are exempt from the require-

ments of section 5 of the Securities Act and State Registration Requirements:

      (1)    by virtue of section 1145 of the Bankruptcy Code, as to distri-
              butions to holders of claims, including, without limitation, to
              (A) various owner trustees, security trustees, indenture trust-
              ees, mortgagees and pass through trustees (collectively, the
              "Trustees"); (B) beneficial holders of claims against the Trust-
              ees; and (C) holders of Prepetition Note Claims and Trade
              Vendor/Lease Rejection Claims.

      (2)    by virtue of section 1145 of the Bankruptcy Code, as to distri-
              butions to the Plan Investors that are made in exchange for the

Plan Investors' Prepetition Lender Claims, Prepetition Note
Claims and Trade Vendor/Lease Rejection Claims.

(3)     by virtue of section 4(2) of the Securities Exchange Act, as to distri-
butions to the Plan Investors that are made in exchange for the Plan
Investors' other cash investments.

AT.     <u>Re-Sale Under 1145</u>. The New Holding Company Stock that is issued
in reliance on section 1145 of the Bankruptcy Code may be resold by the holders
thereof without registration unless the holder is an "underwriter" with respect to such
securities, as defined in section 1145(b)(1) of the Bankruptcy Code.

AU.     <u>Trust Indenture Act</u>. The proposed means for distribution of the
Other Unsecured Claim Cash Payment Amount to holders of Other Unsecured
Claims complies with applicable law, including, but not limited to, the Trust Inden-
ture Act. 15 U.S.C. §§ 77aaa, <u>et</u> <u>al</u>.

AV.     <u>Defined Benefit Plans</u>. The Debtors sponsor the Kmart Corporation
Employee Pension Plan (the "Defined Benefit Plan") covered by Title IV of the
Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29
U.S.C. §§ 1301-1461 (2000). Pursuant to Article 2.3 of the Plan, the Debtors intend
to continue the Defined Benefit Plan. As part of their continuation of the Defined
Benefit Plan, the Debtors intend to satisfy the minimum funding standards under
ERISA and the Internal Revenue Code, pay all Pension Benefit Guaranty Corpora-
tion (the "PBGC") insurance premiums, and administer and operate the Defined
Benefit Plan in accordance with their terms and ERISA. The Plan provides that the

27

Defined Benefit Plan will be continued by the Reorganized Debtors. Accordingly, on the Effective Date, the PBGC will be deemed to have withdrawn the PBGC Claims with respect to the Kmart Corporation Employee Pension Plan.

AW.    Preservation Of Causes Of Action. It is in the best interests of the creditors and interestholders that the causes of action that are not expressly released under the Plan be retained by the Reorganized Debtors pursuant to Article 7.14 of the Plan in order to maximize the value of the Debtors' Estates. It is also in the best interests of creditors and interestholders that Avoidance Actions be waived pursuant to Article 7.14 of the Plan.

AX.    Election Pursuant to 11 U.S.C. § 1111(b). The Florida Tax Collectors have filed a Notice of Election Pursuant to 11 U.S. C. 1111(b) (Docket No. 8845). No other secured creditor has elected the treatment provided by section 1111(b) of the Bankruptcy Code.

ACCORDINGLY, THE COURT HEREBY ORDERS THAT:

1.    Confirmation. The Plan, which consists of the Original Plan and the modifications set forth in paragraph 54 hereof, which are hereby incorporated into and constitute a part thereof, is approved and confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan and the exhibits thereto (in the final form thereof to be filed on or before the Effective Date) are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.

28

2.  **Objections**. All Objections to confirmation of the Plan that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits.

3.  **Provisions Of Plan And Order Nonseverable And Mutually Dependent**. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

4.  **Plan Classification Controlling**. The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors or interestholders in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Interests under the Plan for distribution purposes, (c) may not be relied upon by any creditor or interest holder as representing the actual classification of such Claims or Interests under the Plan for distributions purposes, and (d) shall not be binding on the Reorganized Debtors, the Estates or the Debtors.

5.  **Effects Of Confirmation; Immediate Effectiveness; Successors And Assigns**. The stay contemplated by Bankruptcy Rule 3020(e) shall not apply to

29

this Confirmation Order. Subject to the provisions of Articles 13.1 and 13.2 of the

Plan, and notwithstanding any otherwise applicable law, immediately upon the entry

of this Confirmation Order, the terms of the Plan (including the Plan Exhibits and all

documents and agreements executed pursuant to the Plan) and this Confirmation

Order are deemed binding upon (a) the Debtors, (b) the Reorganized Debtors, (c) all

holders of Claims against and Interests in the Debtors, whether or not Impaired under

the Plan and whether or not, if Impaired, such holders accepted the Plan, (d) each

Person acquiring property under the Plan, (e) any other party-in-interest, (f) any

Person making an appearance in these Chapter 11 Cases, and (g) each of the forego-

ing's respective heirs, successors, assigns, trustees, executors, administrators,

affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or

guardians.

      6.     Continued Corporate Existence; Vesting Of Assets. Except as

otherwise provided in the Plan, each Reorganized Debtor shall continue to exist after

the Effective Date as a separate corporate or other legal entity, with all the powers of

a corporation or legal entity under applicable law in the jurisdiction in which each

applicable Debtor is incorporated or organized and pursuant to the respective

Certificate of Incorporation and Bylaws or other organizational documents in effect

prior to the Effective Date, except to the extent such Certificate of Incorporation and

Bylaws or other organizational documents are amended by the Plan. Except as

otherwise explicitly provided in the Plan or in this Confirmation Order, including, without limitation, Articles 9.6 and 12.1 of the Plan and the Plan Modifications set forth herein, on the Effective Date, all property comprising the Estates (including Retained Actions, but excluding property that has been abandoned pursuant to the Plan or an order of the Court) shall revest in each of the Reorganized Debtors that owned such property or interest in property as of the Effective Date, free and clear of all Claims, liens, charges, encumbrances, rights and interests of creditors and equity security holders. As of the Effective Date, the Reorganized Debtors may operate their business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Court, free of any restriction of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Confirmation Order.

7.      Intercompany Claims and Interests in the Affiliate Debtors. The treatment of Intercompany Claims and Interests in the Affiliate Debtors provided in Articles 5.9 and 7.9 of the Plan is approved in its entirety.

8.      Release Of Liens. Except as otherwise provided in the Plan or this Confirmation Order, or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, including the Exit Financing Facility and the Collateral Trust Agreement, on the Effective Date and/or concurrently with the applicable distributions made pursuant to the Plan, all mort-

31

gages, deeds of trust, liens or other security interests against the property of any

Estate are fully released and discharged (except to the extent Reinstated under the

Plan), and all right, title and interest of any holder of such mortgages, deeds of trust,

liens or other security interests, including any rights to any collateral thereunder,

shall revert to the applicable Reorganized Debtor and its successors and assigns.

     9.    <u>Retained Assets</u>. To the extent the succession to assets of the

Debtors by the Reorganized Debtors pursuant to the Plan are deemed to constitute

"transfers" of property, such transfers of property to Reorganized Debtors and any

transfers of property to the Kmart Creditor Trust (a) are or shall be legal, valid, and

effective transfers of property, (b) vest or shall vest the Reorganized Debtors or the

Kmart Creditor Trust, as applicable, with good title to such property, free and clear

of all liens, charges, Claims, encumbrances, or interests, except as expressly pro-

vided in the Plan or this Confirmation Order, (c) do not and shall not constitute

avoidable transfers under the Bankruptcy Code or under applicable nonbankruptcy

law, and (d) do not and shall not subject the Reorganized Debtors or the Kmart

Creditor Trust to any liability by reason of such transfer under the Bankruptcy Code

or under applicable nonbankruptcy law, including, without limitation, any laws

affecting successor or transferee liability.

     10.    <u>Return of Deposits</u>. All utilities, including any person that

received a deposit or other form of adequate assurance of performance pursuant to

32

section 366 of the Bankruptcy Code during these Chapter 11 cases (collectively, the "Deposit"), including, without limitation, gas, electric, telephone, and sewer, shall return such Deposits to the Debtors and/or the Reorganized Debtors, as the case may be, either by setoff against postpetition indebtedness or by cash refund, within 45 days following the Effective Date.

11.    Discharge, Releases, Limitations Of Liability And Indemnification. The discharge of the Debtors and any of their assets or properties provided in Article 12.2 of the Plan, the releases set forth in Articles 12.4 and 12.5 of the Plan, and the exculpation and limitation of liability provisions set forth in Article 12.8 of the Plan, are deemed incorporated in this Confirmation Order as if set forth in full herein and are hereby approved in their entirety.

12.    Injunction. Except as otherwise specifically provided in the Plan and except as may be necessary to enforce or remedy a breach of the Plan, the Debtors, and all Persons who have held, hold or may hold Claims or Interests and any successors, assigns or representatives of the foregoing shall be precluded and permanently enjoined on and after the Effective Date from: (a) commencing or continuing in any manner any Claim, action or other proceeding of any kind with respect to any Claim, Interest or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection or recovery by any manner or means of any

judgment, award, decree or order with respect to any Claim, Interest or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, (c) creating, perfecting or enforcing any encumbrance of any kind with respect to any Claim, Interest or any other right or Claim against the Reorganized Debtors, which they possessed or may possess prior to the Effective Date, and (d) asserting any Claims that are released hereby.

13.    Automatic Stay. The stay in effect in the Chapter 11 Cases pursuant to section 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunction set forth in the preceding paragraph and/or sections 524 and 1141 of the Bankruptcy Code; provided, however, that nothing herein shall bar the filing of financing documents (including uniform commercial code financing statements, security agreements, leases, mortgages, trust agreements, bills of sale, and applications for aircraft registration) or the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

14.    Matters Relating To Implementation Of The Plan; General Authorizations. The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of any Debtor or Reorganized Debtor or any officer thereof to take any and all actions

34

necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order. In addition to the authority to execute and deliver, adopt, assign, or amend, as the case may be, the contracts, leases, instruments, releases and other agreements specifically granted in this Confirmation Order, the Debtors and the Reorganized Debtors are authorized and empowered, without action of their respective stockholders or boards of directors, to take any and all such actions as any of their executive officers may determine are necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order. Pursuant to section 1142 of the Bankruptcy Code, no action of the stockholders or boards of directors of the Debtors, the Reorganized Debtors or the Kmart Creditor Trust shall be required for the Debtors or the Reorganized Debtors to: (a) enter into, execute and deliver, adopt or amend, as the case may be, any of the contracts, leases, instruments, releases and other agreements or documents and plans to be entered into, executed and delivered, adopted or amended in connection with the Plan, and, following the Effective Date, each of such contracts, leases, instruments, releases and other agreements shall be a legal, valid and binding obligation of the applicable Reorganized Debtor and enforceable against such Reorganized Debtor in accordance with its terms; (b) issue for distribution or reserve for issuance in accordance with the terms of the Plan, the New Holding Company Stock (upon such

35

issuance, all such shares shall be duly authorized, validly issued and outstanding,

fully paid, nonassessable, free and clear of any mortgage, lien, pledge, security

interest or other encumbrance of any kind and not subject to pre-emptive or similar

rights of third parties); or (c) issue a convertible note or notes to ESL Investments,

Inc. in accordance with the Plan and the Investment Agreement (upon such issuance,

if any, such note or notes shall be duly authorized, validly issued and outstanding,

and free and clear of any mortgage, lien, pledge, security interest or other encum-

brance of any kind); or (d) authorize the Reorganized Debtors to engage in any of the

activities set forth in this paragraph or otherwise contemplated by the Plan. Each of

the Chief Executive Officer and President, Chief Financial Officer, Chief Restructur-

ing Officer, and General Counsel of the Debtors, or their respective designees, will

be authorized to execute, deliver, file, or record such contracts, instruments, releases,

indentures, and other agreements or documents, and take such actions as may be

necessary or appropriate to effectuate and further evidence the terms and conditions

of the Plan, this Confirmation Order and any and all documents or transactions

contemplated by the Plan or this Confirmation Order, all without further application

to or order of the Court and whether or not such actions or documents are specifically

referred to in the Plan, the Disclosure Statement, the Solicitation Procedures Order,

this Confirmation Order or the exhibits or appendices to any of the foregoing, and the

signature of such officer on a document shall be conclusive evidence of the officer's

36

determination that such document and any related actions are necessary and appropriate to effectuate or further evidence the terms and conditions of the Plan, this Confirmation Order or other documents or transactions contemplated by the Plan or this Confirmation Order. The secretary or any assistant secretary of each Debtor or Reorganized Debtor is authorized to certify or attest to any of the foregoing actions. Pursuant to section 1142 of the Bankruptcy Code, to the extent that, under applicable nonbankruptcy law, any of the foregoing actions otherwise would require the consent or approval of the stockholders or the boards of directors of any of the Debtors or Reorganized Debtors, this Confirmation Order shall constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the stockholders and directors of the appropriate Debtor or Reorganized Debtor.

15.    <u>Directors And Officers Of Reorganized Debtors</u>. The existing senior officers of the Debtors shall serve in the same capacities after the Effective Date, subject to their employment contracts as assumed by the Plan and subject to the authority of the board of directors of the Reorganized Debtors; <u>provided, however</u>, that New Holding Company reserves the right to identify new officers of the Affiliate Debtors at any time thereafter. The Court approves the appointment of the initial directors of New Holding Company, as disclosed at or prior to the Confirmation Hearing, as of and immediately following the Effective Date. Notwithstanding any otherwise applicable non-bankruptcy law, directors of New Holding Company

37

appointed in accordance with Article 7.5(b) of the Plan shall serve an initial term for a period from the Effective Date through the date of the second annual meeting after the Effective Date. Thereafter, and subject to New Holding Company's rights to amend its bylaws, directors shall serve one (1) year terms (with such subsequent terms subject to election by shareholder vote) with each such term expiring at the conclusion of the next annual meeting of shareholders. In the event, prior to the Effective Date, a person designated to be a member of New Holding Company's board of directors dies, is disabled, or otherwise becomes unable to fulfill the role, the Person designating such member will designate a replacement for such director. In the event, after the Effective Date and prior to the second annual meeting that occurs after the Effective Date, of the death, disability, resignation, or removal of a member of the board of directors, the directors designated by the Person who designated the director whose vacancy is sought to be filled will designate a replacement for such director, which replacement will be reasonably satisfactory to New Holding Company. Upon dissolution of the Creditors' Committees, those members of each of the Creditors' Committees serving as members on the Post-Effective Date Committee shall designate a replacement for such director, which replacement will be reasonably satisfactory to New Holding Company. The existing directors of the Affiliate Debtors shall continue to serve in their current capacities after the Effective Date, provided, however, that New Holding Company reserves the right to identify

38

new members of the board of directors of such Affiliate Debtors at any time thereaf-
ter.

16.    Approval Of Employment, Retirement, Indemnification, And
Other Related Agreements And Incentive Compensation Programs. Pursuant to
section 1142(b) of the Bankruptcy Code, without further action by the Court or the
stockholders or board of directors of the Reorganized Debtors, and without limiting
the power or authority of the Reorganized Debtors following the Effective Date to
take any and all such actions as may be permitted or required by applicable
nonbankruptcy law, the Reorganized Debtors are authorized, as of the Effective Date,
to: (a) maintain, amend, or revise existing employment, retirement, indemnification,
and other agreements with their respective active directors, officers, and employees
who will continue in such capacities (or similar capacities) after the Effective Date,
or retirement income plans, welfare benefit plans, and other plans for such Persons,
subject to the terms and conditions of any such agreement, and subject to Article 7.7
and Article 8.1(b) of the Plan; and (b) enter into new employment, retirement,
indemnification, and other agreements for active directors, officers, and employees,
and retirement income plans, welfare benefits plans, and other plans for active and
retired directors, officers, and employees.

17.    Exit Financing Facility. The provisions of Article 7.12 of the
Plan are approved in their entirety. Specifically, the terms of the Exit Financing

filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. The Court shall retain specific jurisdiction with respect to these matters.

19.    Assumptions. The executory contract and unexpired lease provisions of Article VIII of the Plan are approved. Except as otherwise provided in the Plan, in any contract, instrument, release or other agreement and approved by this Court, on the Effective Date, pursuant to section 365 of the Bankruptcy Code, the applicable Debtor or Debtors shall assume, as indicated, each Intercompany Executory Contract and Unexpired Lease not listed on Plan Exhibit L-1, each Employee-Related Agreement listed on Plan Exhibit L-2, and each Other Executory Contract and Unexpired Lease listed on Plan Exhibit L-3 (collectively, the "Assumed Contracts and Leases"). Each of the Assumed Contracts and Leases shall be assumed only to the extent that any such contract or lease constitutes an executory contract or unexpired lease. Listing a contract or lease on Plan Exhibits L-1 through L-3 shall not constitute an admission by a Debtor or Reorganized Debtor that such contract or

41

lease is an executory contract or unexpired lease or that a Debtor or Reorganized
Debtor has any liability thereunder.

20.    Payments Related to Assumption of Executory Contracts and
Unexpired Leases.  This Confirmation Order shall constitute an order approving the
assumptions described in Article 8.1 of the Plan, pursuant to section 365 of the
Bankruptcy Code, as of the Effective Date.  The provisions (if any) of each
Intercompany Executory Contract and Intercompany Unexpired Lease to be assumed
under the Plan which are or may be in default shall be satisfied in a manner to be
agreed to by the relevant Debtors and/or non-Debtor Affiliates.  The provisions (if
any) of each Employee-Related Agreement or Other Executory Contract or Unex-
pired Lease to be assumed under the Plan that are or may be in default shall be
satisfied solely by Cure.  Any Person claiming that a monetary cure amount is due in
connection with the assumption of any executory contract or unexpired lease as
contemplated by section 365(b) of the Bankruptcy Code must file a monetary cure
claim with the Bankruptcy Court asserting all alleged amounts accrued through the
Effective Date, if any (the "Cure Claim"), no later than forty-five (45) days after the
Effective Date (the "Cure Claim Submission Deadline").  Any party failing to submit
a Cure Claim by the Cure Claim Submission Deadline shall be forever barred from
asserting, collecting, or seeking to collect any amounts relating thereto against the
Debtors or Reorganized Debtors. In the case of a Cure Claim related to an unexpired

42

lease of non-residential real property, such Cure Claim must include a breakdown by store by category of all amounts claimed, including, but not limited to, amounts for real estate taxes, common area maintenance, and rent. The Debtors shall have thirty (30) days from the Cure Claim Submission Deadline or the date a Cure Claim is actually filed, whichever is later, to file an objection to the Cure Claim. Any disputed Cure Claims shall be resolved either consensually by the parties or by the Bankruptcy Court. Disputed Cure Claims shall be set for status at subsequent hearings following the Cure Claim Submission Deadline with separate evidentiary hearings to be set by the Bankruptcy Court as needed. If the Debtors do not dispute a Cure Claim, then the Debtors shall pay the Cure Claim, if any, to the claimant within twenty (20) days of the Objection Deadline. Disputed Cure Claims that are resolved by agreement or Final Order shall be paid by the Debtors within twenty (20) days of such agreement or Final Order.

21.    Rejections. Except as otherwise provided in the Plan, in any contract, instrument, release or other agreement entered into in connection with the Plan and approved by this Court, on the Effective Date, or as otherwise set forth on Plan Exhibits L-1 through L-3, each Intercompany Executory Contract and Intercompany Unexpired Lease listed on Plan Exhibit L-1, Employee-Related Agreement not listed on Plan Exhibit L-2, Other Executory Contract and Unexpired Lease not listed on Plan Exhibit L-3 (collectively, the "Rejected Contracts and

43

Leases") shall be rejected pursuant to section 365 of the Bankruptcy Code. All of the Rejected Contracts and Leases shall be rejected only to the extent that any such contract or lease constitutes an executory contract or unexpired lease. This Confirmation Order shall constitute an order approving such rejections, pursuant to section 365 of the Bankruptcy Code, as of the Effective Date; provided, however, that to the extent that a prior order provides that a contract or lease was to be rejected upon notice, to the extent such notice has not been given as of the entry of this Confirmation Order, such order shall remain enforceable and shall control the rejection of such contract or lease. Nothing in this Order modifies the Section 365(d)(4) deadline to assume or reject leases, as extended by other orders of this Court.

22. DIP Facility Claim/Plan Investor Claim. On the Effective Date, the DIP Facility Claim and the Plan Investor Claim shall be Allowed in an amount to be agreed upon by the Debtors and, as applicable, the DIP Lenders and the Plan Investors, or as ordered by the Bankruptcy Court with notice to the Creditors' Committees, not less than five (5) Business Days prior to the Effective Date, and all obligations (other than contingent indemnity obligations) of the Debtors under the DIP Facility and with respect to the Plan Investor Claim shall be paid in full in Cash on the Effective Date; provided, however, that with respect to letters of credit issued under the DIP Facility, such claims may be satisfied in full by the cash collateralization of such letters of credit or by procuring back-up letters of credit.

Upon compliance with the foregoing sentence, all liens and security interests granted

to secure such obligations shall be, and shall for all purposes be deemed to be,

cancelled and of no further force and effect. To the extent that the DIP Lenders or

the DIP Agent have filed or recorded publicly any liens and/or security interests to

secure the Debtors' obligations under the DIP Facility, the DIP Lenders or the DIP

Agent, as the case may be, shall take any commercially reasonable steps requested by

the Debtors that are necessary to satisfy, cancel and/or extinguish such publicly-filed

liens and/or security interests.

        23.     Professional Claims And Final Fee Applications. All final

requests for payment of Professional Claims and Key Ordinary Course Professional

Claims must be filed no later than the last day of the second full month after the

Effective Date. After notice and a hearing in accordance with the procedures

established by the Court, the allowed amounts of such Professional Claims and Key

Ordinary Course Professional Claims, and expenses shall be determined by the

Court. Subject to the Holdback Amount, on the Effective Date, the Debtors or

Reorganized Debtors shall pay all amounts owing to Professionals and Key Ordinary

Course Professionals, and members of the Statutory Committees for all outstanding

amounts payable relating to prior periods through the Effective Date. In accordance

with Article 10.2(b) of the Plan, each Professional and Key Ordinary Course Profes-

sional shall estimate fees and expenses due for periods that have not been billed as of

the anticipated Effective Date and deliver such estimate to the Debtors, counsel for

the Statutory Committees, and the United States Trustee. Within forty-five (45) days

after the Effective Date, a Professional or Key Ordinary Course Professional receiv-

ing payment for the estimated period shall submit a detailed invoice covering such

period in the manner and providing the detail as set forth in the Professional Fee

Order or the Ordinary Course Professional Order, as applicable. Should the esti-

mated payment received by any Professional exceed the actual fees and expenses for

such period, this excess amount will be credited against the Holdback Amount for

such Professional or, if the award of the Holdback Amount for such Professional is

insufficient, disgorged by such Professional. On the Effective Date, the Debtors or

the Reorganized Debtors shall pay to the Disbursing Agent, in order to fund the

Holdback Escrow Account, Cash equal to the aggregate Holdback Amount for all

Professionals. The Disbursing Agent shall maintain the Holdback Escrow Account

in trust for the Professionals with respect to whom fees have been held back pursuant

to the Professional Fee Order. Such funds shall not be considered property of the

Debtors, the Reorganized Debtors or the Estates. The remaining amount of Profes-

sional Claims owing to the Professionals shall be paid to such Professionals by the

Disbursing Agent from the Holdback Escrow Account when such claims are finally

allowed by the Court. When all Professional Claims and Key Ordinary Course

Professional Claims have been paid in full, amounts remaining in the Holdback

Escrow Account, if any, shall be paid to the Reorganized Debtors. Upon the Effective Date, any requirement that Professionals or Key Ordinary Course Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for such services rendered after such date will terminate, and the Reorganized Debtors will employ and pay Professionals and Key Ordinary Course Professionals in the ordinary course of business.

24. Substantial Contribution Compensation And Expenses Bar Date. Any person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code must file an application with the Clerk of the Court, on or before the forty-fifth (45th) day after the Effective Date (the "503 Deadline"), and serve such application on counsel for the Debtors, the Plan Investors, and the Statutory Committees and as otherwise required by the Court and the Bankruptcy Code on or before the 503 Deadline, or be forever barred from seeking such compensation or expense reimbursement.

25. Other Administrative Claims. All other requests for payment of an Administrative Claim (other than as set forth in the Plan) must be filed, in substantially the form of the Administrative Claim Request Form attached to the Plan as Exhibit M, with the Claims Agent, Trumbull Bankruptcy Services, and served on counsel for the Debtors and the Plan Investors no later than forty-five (45)

47

days after the Effective Date. Any such request for payment of an Administrative

Claim that is not timely filed and served shall be disallowed automatically without

the need for any objection from the Debtors or the Reorganized Debtors. The

Reorganized Debtors may settle an Administrative Claim without further Court

approval. Unless the Debtors or the Reorganized Debtors object to an Administra-

tive Claim by the Claims/Interests Objection Deadline, such Administrative Claim

shall be deemed allowed in the amount requested. In the event that the Reorganized

Debtors or the Debtors object to an Administrative Claim, the Court shall determine

the Allowed amount of such Administrative Claim. Notwithstanding the foregoing,

no request for payment of an Administrative Claim need be filed with respect to an

Administrative Claim which is paid or payable by the Reorganized Debtors or the

Debtors in the ordinary course of business.

      26.    <u>Bar Date For Rejection Damage Claims And Related Proce-</u>

<u>dures</u>. If the rejection by the Debtors, pursuant to the Plan or otherwise, of an

Intercompany Executory Contract or Intercompany Unexpired Lease, Employee-

Related Agreement, or Other Executory Contract or Unexpired Lease results in a

Claim, then such Claim shall be forever barred and shall not be enforceable against

either the Debtors, the Reorganized Debtors or the Plan Investors or such entities'

properties unless a proof of claim is filed with the Claims Agent and the Post-

Effective Date Committee and served upon counsel to the Debtors, the Plan Inves-

48

tors, and the Creditors' Committees within thirty (30) days after service of the later of (a) notice of the Confirmation Order or (b) other notice that the executory contract or unexpired lease has been rejected.

       27.    Restructuring Transactions. The Restructuring Transactions contemplated by Article 7.3 of the Plan and described in Exhibit H to the Plan are approved and the Debtors and Reorganized Debtors and their officers are authorized to execute such documents as may be reasonably required in order to effectuate the Restructuring Transactions. Each and every federal, state, and local governmental agency or department is hereby directed to accept for filing and recording any and all documents and instruments necessary or appropriate to consummate the transactions contemplated by the Restructuring Transactions. Further, each and every federal, state and local government agency is: (a) directed to continue valid or renew all liquor licenses, firearm licenses, pharmacy licenses, construction permits, use and occupancy permits, cigarette permits, business licenses, franchise licenses and other regulatory approvals, consents, licenses and permits of any kind for the surviving parties of the Restructuring Transactions; (b) enjoined from changing any credit terms for liquor deliveries or cigarette deliveries to Reorganized Debtors; and (c) directed to return to each Reorganized Debtor, whether by setoff against postpetition indebtedness or by refund, within 20 days after the Effective Date, any deposits or escrowed funds held by that agency or department.

49

28.    <u>Investment Agreement</u>. The Investment Agreement, as amended, attached to the Plan as Exhibit E, is hereby approved, and the Debtors and Reorganized Debtors and their officers are hereby authorized to execute and deliver such other documents as may be reasonably required to effectuate the Investment Agreement.

29.    <u>Registration Rights Agreement</u>. Without limiting the effect of section 1145 of the Bankruptcy Code or the foregoing paragraphs, New Holding Company is authorized to enter into a Registration Rights Agreement with the Plan Investors, on substantially the terms set forth in the form attached to the Plan as Exhibit G, which form is hereby approved.

30.    <u>Exemption From Securities Laws</u>. The provisions of section 1145 of the Bankruptcy Code are applicable to the issuance and distribution of the New Holding Company Common Stock in exchange for the recipient's claim or interest in the Debtors. In addition, section 4(2) of the Securities Exchange Act is applicable to the issuance and distribution of the New Holding Company Common Stock to the Plan Investors on account of their other cash investments in the Debtors of no less than $140 million. Therefore, to the extent that an "offer or sale" is deemed to have occurred, any such securities are exempt from the requirements of section 5 of the Securities Act and State Registration Requirements. Pursuant to and to the fullest extent permitted by section 1145 of the Bankruptcy Code, the resale of

50

any securities issued under the Plan shall be exempt from section 5 of the Securities Act and any State Registration Requirements.

31.    Formation Of And Provisions Regarding The Kmart Creditor Trust. Without any further action of the directors or shareholders of the Debtors, on the Effective Date, the Trust Agreement, substantially in the form of Exhibit K to this Plan, shall become effective. The Trustee shall accept the Kmart Creditor Trust and sign the Trust Agreement on the Effective Date and the Kmart Creditor Trust will then be deemed created and effective. On the Effective Date, the Debtors' Estates shall transfer and shall be deemed to have irrevocably transferred to the Kmart Creditor Trust, for and on behalf of the beneficiaries of the Trust, with no reversionary interest in the Debtors or the Reorganized Debtors, the Trust Assets; provided, however, that nothing herein is intended to transfer all or any portion of any Retained Action to the Kmart Creditor Trust. Interests in the Kmart Creditor Trust shall be uncertificated and shall be non-transferable except upon death of the interest holder or by operation of law. Holders of interests in the Kmart Creditor Trust shall have no voting rights with respect to such interests. The Kmart Creditor Trust shall have a term of three (3) years from the Effective Date, without prejudice to the rights of the Trust Advisory Board to extend such term conditioned upon the Kmart Creditor Trust's not then becoming subject to the Exchange Act. The terms of the Trust may be amended by the Trustee or the Debtors to the extent necessary to

51

ensure that the Trust will not become subject to the Exchange Act. For federal income tax purposes, it is intended that the Kmart Creditor Trust be classified as a liquidating trust under section 301.7701-4 of the Procedure and Administration Regulations and that such trust is owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the beneficiaries be treated as if they had received a distribution of an undivided interest in the Trust Assets and then contributed such interests to the Kmart Creditor Trust.

32.    Approval Of Creditor Trust Trustee. The Person designated as Trustee is disinterested as defined by section 101(14) of the Bankruptcy Code. The appointment of the Trustee under the Creditor Trust Agreement and pursuant to the Unsecured Creditors' Committee's Notice (Docket No. 10017) is hereby approved, and the Trustee is hereby authorized to carry out all duties as set forth in this Order and the Creditor Trust Agreement.

33.    Resolution Of Claims And Interests. Except as otherwise ordered by the Court, any Claim or Interest that is not an Allowed Claim or Allowed Interest shall be determined, resolved, or adjudicated in accordance with the terms of the Plan. The Debtors or Reorganized Debtors, as the case may be, may (a) until 180 days after the Effective Date (unless extended by order of the Court) file objections in the Court to the allowance of any Claim or Interest (whether or not a proof of

Claim or Interest has been filed) and/or (b) amend their schedules at any time before their Chapter 11 Cases are closed.

34.    Existing Common Stock.  Those entities that hold Existing Common Stock as of the effectiveness of the Plan on the Effective Date, as reflected on the books of the Debtors' stock transfer agent, shall be deemed to hold Allowed Interests.  Pursuant to the cancellation of the Existing Common Stock Set forth in Article 5.11 of the Plan, the par value of $519,123,988 for all issued and outstanding Kmart Existing Common Stock and the related paid-in capital in excess of par value of $2,577,948,677 will be reduced to zero.  Any par value and related paid-in capital in excess of par value related to the New Holding Company Common Stock will be established pursuant to generally accepted accounting principles.

35.    Distribution Reserve.  Subject to approval of the Court after notice to the Master Service List, the 2002 List, Disputed Claimants, and opportunity to be heard, the Reorganized Debtors will withhold, as part of the Distribution Reserve, an amount of New Holding Company Common Stock equal to the number of shares the Reorganized Debtors determine in the exercise of their business judgment is necessary to satisfy the distributions required to be made to the holders of Trade Vendor/Lease Rejection Claims and Other Unsecured Claims in the Chapter 11 Cases, when the allowance or disallowance of each Disputed Claim is ultimately determined.  The Disbursing Agent, the Debtors or the Reorganized Debtors may

53

request estimation for any Disputed Claim that is contingent or unliquidated, but such parties are not required to do so, and nothing herein shall impair Claimant's defenses or objections to such requested estimation. Such Distribution Reserve may not be relied upon to show that any Disputed Claim is either probable or estimable for any other purpose. No distribution shall be made to any holder of a Trade Vendor Lease/Rejection Claim or Other Unsecured Claim until the Distribution Reserve is established. Parties in interest may object to the amounts of New Holding Company Common Stock proposed by the Debtors to be held in the Distribution Reserve on any grounds, including, without limitation, that the Distribution Reserve should be set at the full amount of Disputed Claims pursuant to 11 U.S.C. § 1123(a)(4) and § 1129(a). The Court shall resolve any disputes with respect to the proper amount of New Holding Company Common Stock to be held in the Distribution Reserve.

36.    Payment Of Fees. All fees payable by the Debtors under 28 U.S.C. § 1930 shall be paid on or before the Effective Date, and the Reorganized Debtors shall thereafter pay any statutory fees that come due until the case is closed, converted or dismissed.

37.    Authorization To Consummate Plan. The Court authorizes the Debtors to consummate the Plan after entry of this Confirmation Order. The Debtors are authorized to execute, acknowledge, and deliver such deeds, assignments,

54

conveyances, and other assurances, documents, instruments of transfer, uniform commercial code financing statements, trust agreements, mortgages, indentures, security agreements, and bills of sale and to take such other actions as may be reasonably necessary to perform the terms and provisions of the Plan, all transactions contemplated by the Plan, and all other agreements related thereto.

        38.    <u>Failure To Consummate Plan And Substantial Consummation</u>. If consummation of the Plan does not occur, then the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), the assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be null and void. In such event, nothing contained in the Plan or this Confirmation Order, and no acts taken in preparation for consummation of the Plan, shall (a) constitute a waiver or release of any Claims by or against or Interests in the Debtors or any other Person, (b) prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, (c) constitute an admission of any sort by the Debtors or any other Person, or (d) be construed as a finding of fact or conclusion of law with respect thereto. Upon the occurrence of the Effective Date with respect to each Debtor, the Plan shall be deemed substantially consummated as to such Debtor.

39.    Retention Of Jurisdiction.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction as provided in the Plan over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other items and matters, jurisdiction over those items and matters set forth in Article XIV of the Plan.

40.    Post-Effective Date Committee.  Effective on the Effective Date, the Statutory Committees appointed in the Chapter 11 Cases shall dissolve automatically, whereupon their members, professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to obligations arising under confidentiality agreements, joint interest agreements, and protective orders entered during the Chapter 11 Cases which shall remain in full force and effect according to their terms; applications for Professional Claims; requests for compensation and reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code for making a substantial contribution in any of the Chapter 11 Cases; and any motions or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order.  The Court hereby approves the formation, on the Effective Date, of a Post-Effective Date Committee (the "Post-Effective Date Committee") with its

56

duties, rights and obligations limited to those specifically enumerated in Article 15.5(a) of the Plan. Without limiting the foregoing, the Post-Effective Date Committee shall consist of four (4) members, with three (3) of such members to be appointed by the Unsecured Creditors' Committee, and one (1) member to be appointed by the Financial Institutions' Committee, that may adopt by-laws governing its conduct.

41.    References To Plan Provisions. The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

42.    Separate Confirmation Orders. This Confirmation Order is and shall be deemed a separate Confirmation Order with respect to each of the Debtors in each Debtors' separate Chapter 11 Case for all purposes. The Clerk of the

Court is directed to file and docket this Confirmation Order in the Chapter 11 Case of each of the Debtors.

43.    Filing And Recording.  This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Interests existing prior to such date have been unconditionally released, discharged and terminated, and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any document or instruments.  Each and every federal, state and local government agency is hereby directed to accept any and all documents and instruments necessary, useful or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax or similar tax imposed by state or local law.

44.    Notice Of Confirmation Order and Occurrence Of Effective Date.  On or before the fifth (5th) Business Day following the occurrence of the Effective Date, the Debtors shall serve notice of this Confirmation Order and

58

occurrence of the Effective Date pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), on all Claimholders, the United States Trustee and other parties-in-interest, by causing a notice of this Confirmation Order and the occurrence of the Effective Date in substantially the form of the notice annexed hereto as Exhibit B, which form is hereby approved (the "Notice of Effective Date"), to be delivered to such parties by first class mail, postage prepaid; provided, however, that notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Person to whom the Debtors mailed a notice of the Bar Date or Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved - left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person of that Person's new address. The notice described herein is adequate under the particular circumstances of the Chapter 11 Cases, and no other or further notice is necessary. Notwithstanding the foregoing, pursuant to Bankruptcy Rule 2002(l), the Debtors may satisfy the requirements of Bankruptcy Rule 2002(f)(7) with respect to any Claimholder that does not reside in the United States by publishing the Notice of Effective Date in The Wall Street Journal (Global Edition) and The New York Times (National Edition) within fifteen (15) Business Days of the Effective Date.

45.    Priority Tax Claims.  If the Reorganized Debtors fail to make any payment to the holder of a Priority Tax Claim called for under the Plan, then

such holder may declare the Reorganized Debtors in default of the Plan by providing notice of the default to the Reorganized Debtors as set forth in Article 15.8 of the Plan. If the Reorganized Debtors fail to cure the default within twenty-one (21) days of such notice, then such holder may proceed to collect any liabilities related to its Claim through lawful process, including applicable non-bankruptcy law.

46.     28 U.S.C. § 157(d). Nothing in this Confirmation Order or the Plan is intended to modify or violate 28 U.S.C. § 157(d).

47.     Exit Financing Matters.

(a)     All Exhibits to the Plan and documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto) and the execution, delivery and performance of such exhibits, documents, and agreements in substantially the form submitted at the Confirmation Hearing by the Debtors in accordance with their respective terms are approved, including, but not limited to, the Exit Financing Facility and the Investment Agreement and all documents, instruments, and agreements contemplated thereby or to be executed in connection therewith.

(b)     The terms of the Exit Financing Facility, in substantially the form set forth in the Exit Financing Facility Agreement documents filed as Exhibit D-1 and Exhibit D-2 to the Plan, are hereby approved. The Reorganized Debtors are hereby authorized to execute such Exit Financing Facility Agreement

documents together with such other documents as the applicable Reorganized Debtors and the applicable lenders may reasonably require in order to effectuate the Exit Financing Facility.

(c)    The Debtors or Reorganized Debtors are hereby authorized to grant to the applicable lenders under the Exit Financing Facility or other appropriate party valid, binding, enforceable and perfected security interests in and Liens upon all Collateral specified in the Exit Financing Facility Agreement to secure all of the obligations under or in connection with the Exit Financing Facility Agreement. It appearing to the Court that the Exit Financing Facility Agreement and each document, instrument, and agreement executed in connection therewith shall constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in accordance with their terms. The security interests and liens granted pursuant to, or in connection with, the Exit Financing Facility Agreement (and all documents, instruments and agreements related thereto and annexes, exhibits and schedules appended thereto) shall constitute, as of the Effective Date, legal, valid and duly perfected first priority liens and security interests in and to the collateral specified therein, subject only, where applicable, to the pre-existing liens and security interests specified or permitted in the Exit Financing Facility Agreement or the documents, instruments or agreements contemplated thereby. The lien granted

herein to the Exit Financing Lenders shall not extend to consigned goods or the proceeds of consigned goods.

(d)     On the Effective Date, all of the liens and security interests to be created under, or in connection with, the Exit Financing Facility Agreement shall be deemed created and shall be valid and perfected without any requirement of filing or recording of financing statements, mortgages or other evidence of such liens and security interests and without any approvals or consents from governmental entities or any other persons and regardless of whether or not there are any errors, deficiencies or omissions in any property descriptions attached to any filing and no further act shall be required for perfection of the Liens and security interests. Notwithstanding the foregoing, the Debtors or Reorganized Debtors, and any other persons granting such liens and security interests, are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of state, provincial, federal, or other law (whether foreign or domestic) that would be applicable in the absence of this Confirmation Order, and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

(e)    The Debtors are authorized and empowered to execute and deliver all documents, agreements and instruments and take all actions reasonably necessary to effectuate the consummation and implementation of the Plan, including, without limitation, the execution, delivery and performance of the Exit Financing Facility Agreement (substantially in the form annexed as Exhibits to the Plan or filed with this Court), and each other document, instrument, and agreement to be executed in connection therewith and the transactions contemplated thereby. All such actions taken or caused to be taken shall be deemed to have been authorized and approved by this Court and shall be deemed effective pursuant to applicable non-bankruptcy corporate law and without further corporate act or action under applicable law and without any requirement of further action by the stockholders or directors of the Debtors. Each of such documents, instruments, and agreements will, upon execution, be valid, binding and enforceable against the Debtors and any other person who is a party thereto, and is entered into for good and valuable consideration, including the benefits of the Plan.

(f)    Based upon the record of these Chapter 11 Cases, the security interests to be granted by the Debtors and/or Reorganized Debtors pursuant to, or in connection with, the Exit Financing Facility Agreement (i) appear to the Court to be legal, valid and enforceable, and (ii) do not constitute preferential

63

transfers or fraudulent conveyances under the Bankruptcy Code or any federal or state law.

48.    Trade Vendors' Lien Program.  The terms of the Trade Vendors' Lien Program, in substantially the form set forth in the Trade Vendors' Lien Program documents filed as Exhibit J-1 and Exhibit J-2 to the Plan, are hereby approved.  The Reorganized Debtors are hereby authorized to execute such Trade Vendors' Lien Program documents together with such other documents as the applicable Reorganized Debtors may be reasonably required in order to implement the Trade Vendors' Lien Program.  On the Effective Date, the Trade Vendors' Lien shall be deemed created and shall be valid and perfected without any requirement of filing or recording of financing statements, mortgages or other evidence of such lien and without any approvals or consents from governmental entities or any other persons and regardless of whether or not there are any errors, deficiencies or omissions in any property descriptions attached to any filing and no further act shall be required for perfection of the Trade Vendors' Lien.  Each person or entity issuing securities under the Plan, any entity acquiring property under the Plan, and any creditor and/or equity security holder of the Debtors or Reorganized Debtors, shall be deemed to contractually subordinate any present or future claim, right, or other interest it may have in and to any proceeds received from the disposition, release, or liquidation of any of the Debtors' leased stores that are open and operating stores as

64

of the Effective Date (the "Open Store Leases"), to the parties secured by the Trade

Vendors' Lien; provided, however, that in no case shall the lenders under the Exit

Financing Facility be deemed subordinated in this regard; and provided, further, that

so long as the Trade Vendors' Lien has not been terminated or has not expired, (i)

neither the Debtors nor the Reorganized Debtors may encumber, sell, lease, transfer

or otherwise dispose of or take other action to impair the subordination granted

hereby with respect to more than 20% in fair market value of the Open Store Leases,

unless the proceeds of any such transactions in excess of such 20% threshold are held

in an escrow account for the ratable benefit of the parties with an interest or claim

with respect to such proceeds pursuant to the terms of the Collateral Trust Agreement

attached hereto as Exhibit J-2, and (ii) any loan or investment by the Plan Investors

will be subject to the subordination set forth in this provision (except with respect to

any loan or investment to the extent that the amount of such loan or investment plus

the amount of all other investments made by the Plan Investors pursuant to the

Investment Agreement exceeds $280 million (giving credit for and including in the

calculation all investments and loans made by the Plan Investors or loans or invest-

ments made by third parties and guaranteed by the Plan Investors, but excluding the

value of any Class 3, Class 4 and Class 5 claims which the Plan Investors may

hold)).  Such contractual subordination shall terminate upon termination or expira-

tion of the Trade Vendors' Lien.

49.    Provisions Relating to Instrumentalities of the United States.

(a)    With respect to Article 12.6 of the Plan, nothing in the Plan or this Confirmation Order shall enjoin or otherwise impair the United States' rights of setoff and/or recoupment unless otherwise agreed to in writing by the United States and the Debtors or the Reorganized Debtors, as the case may be.

(b)    Solely with respect to the United States, the discharge provision set forth in Article 12.2 of the Plan shall not be construed and shall not operate to expand the Debtors' discharge rights beyond those established by the Bankruptcy Code unless otherwise agreed to in writing by the United States and the Debtors or the Reorganized Debtors, as the case may be.

(c)    The discharge provision set forth in Article 12.2 of the Plan and the injunction provision set forth in Article 12.11 of the Plan are not intended, shall not be construed, and shall not operate to bar the United States from pursuing any police or regulatory action against the Debtors to the extent excepted from the automatic stay provisions of 11 U.S.C. § 362 of the Bankruptcy Code.

(d)    Interest shall be paid on oversecured claims as provided for by 11 U.S.C. § 506(b) of the Bankruptcy Code from the Petition Date and, following the Effective Date, on priority claims as set forth in the Plan.

(e)    With respect to Article 9.8(a) of the Plan, claims of each individual agency of the United States shall be paid in accordance with the Plan

66

as soon as all of the claims of that individual agency against a particular Debtor are either allowed or disallowed.

   (f) Article 15.11 of the Plan shall not apply to the United States.

   (g) With respect to Article 2.2 of the Plan, any unsecured priority claim of the Internal Revenue Service shall be paid, at the option of the Debtors, either in full within thirty (30) days of confirmation or in equal monthly payments within six (6) years of the Confirmation Date with interest from the Confirmation Date, pursuant to 26 U.S.C. §§ 6621 and 6622.

   (h) If the Debtors or their successors in interest fail to make any payment called for under the Plan to the United States, then the United States may declare that the Debtors or their successors in interest are in default of the Plan by providing notice of the default to the Debtors as set forth in Article 15.8 of the Plan. If the default is not cured within twenty-one (21) days of such demand, then the United States may collect its liabilities through lawful process. With respect to the Internal Revenue Service, this shall include use of the administrative collection provisions of the Internal Revenue Code.

   (i) With respect to Article 1.144 of the Plan, as provided by 11 U.S.C. § 502(a), a secured claim filed by the United States shall be deemed

allowed unless a party in interest objects. If no objections are filed by the Claims Objection Deadline, the secured claim is allowed and no final order is needed.

        (j)     Valid post petition liabilities to the United States, if any, shall be paid in full when due in accordance with applicable law in the ordinary course of business.

        50.    Provisions Relating to Stewardship Investigation.

        (a)     On the Effective Date, the Kmart Creditor Trust shall succeed, for the benefit of holders of Allowed Claims and Interests who under the Plan are entitled to share in the recoveries of the Kmart Creditor Trust, to all of the rights, privileges and immunities with respect to the Trust Assets including, without limitation, the attorney-client privilege and the time records in which Trust Claims may be brought under sections 108 and 546 of the Bankruptcy Code or otherwise.

        (b)     Subject to further protective orders or evidentiary rulings as may be issued hereafter, neither the Trustee nor the Trust Advisory Board shall in any way be restricted or limited in connection with the prosecution of Trust Claims, including, without limitation, in the use of (i) any information, including documents, obtained from the Debtors, the Unsecured Creditors' Committee, the Financial Institutions' Committee or the Equity Committee or (ii) any Rule 2004 Material received in accordance with the Order Granting Debtors' Motion for the

68

Entry of a Protective Order with Respect to Rule 2004 Discovery and Entering

Protective Order, entered December 5, 2002.

        (c)     Any and all Federal Rule of Bankruptcy Procedure

2004 subpoenas, or agreements in lieu of such subpoenas, made or issued during the

course of these cases (collectively, "Rule 2004 Demands"), whether on behalf of the

Debtors, the Unsecured Creditors' Committee, the Financial Institutions' Committee

or the Equity Committee, shall be enforceable on and after the Effective Date by the

Debtors, the Trustee, and/or the Trust Advisory Board as if any were the entity on

whose behalf such Rule 2004 Demands were issued or made.  The Court will have

continuing jurisdiction to enforce subpoenas issued prior to confirmation in accor-

dance with Rule 2004 or agreements made in lieu of a subpoena prior to confirma-

tion.

        51.    <u>Personal Injury and Other Litigation Claims</u>.  Notwithstanding

any provision of the Plan or its modifications to the contrary, the confirmation and

effectuation of the Plan as modified shall not release, reduce or discharge any surety

of the Debtors from such surety's obligations to satisfy any portion of any claim

arising from a civil money judgment.

        52.    <u>Effect on Other Orders and Agreements</u>.  Neither the confir-

mation of the Plan nor anything set forth in this Confirmation Order shall modify this

Court's Final Order Pursuant to 11 U.S.C. §§ 105, 361, 363, and 364 and Bankruptcy

Rules 4001 and 9019 (i) Approving Settlement of Surety-Related Claims, (ii)

Authorizing Continuation of Surety Bond Program, (iii) Approving Extension of

Secured Surety Credit, (iv) Granting Liens and Super-Priority Administrative

Expense Claims, (v) Providing Adequate Protection, and (vi) Shortening Notice

entered on March 21, 2002 (Docket No. 1770).

53. <u>Miscellaneous</u>.

(a) Notwithstanding anything in the Plan to the contrary,

all (i) Setoff Liens (as defined in the DIP Facility Order) and (ii) Setoff Rights (as

defined in the DIP Facility Order), as preserved pursuant the Order, entered by this

Court on January 25, 2002, Pursuant to 11 U.S.C. §§ 105, 345 and 363 Authorizing

(A) Continued Maintenance of Existing Bank Accounts, (B) Continued Use of

Existing Cash Management System, (C) Continued Use of Existing Business Forms,

(D) Continuation of Intercompany Transactions with Non-Debtor Subsidiaries and

Affiliates, and (E) Waiving Investment and Deposit Requirements, shall continue in

full force and effect to secure a Claim of a Set-Off Claimant (as defined in the DIP

Facility Order) that shall be deemed to arise in the event (if at all) such Setoff

Claimant becomes obligated by a Court order to return any payments such Setoff

Claimant received pursuant to the Order, entered by the Court on February 13, 2002,

Pursuant to 11 U.S.C. §§ 105(a) and 363 Authorizing the Debtors to Honor Reim-

bursement Obligations ("Reimbursement Obligations") to Issuers of Pre-Petition

Letters of Credit ( "L/C Issuers") Issued for the Benefit of the Debtors' Foreign

Vendors (the "Reimbursement Order"). Such Claim shall be in the aggregate amount

of all such returned payments and shall be treated as an Allowed Secured Claim and

shall be paid in full and in Cash pursuant to Section 5.1(ii)(A) of the Plan.

        (b)     Without limiting the foregoing, in the event (if at all)

any L/C Issuer becomes obligated by Court order to return any payments such L/C

Issuer received pursuant to the Reimbursement Order, such L/C Issuer shall be

entitled, subject to section 10.4 of the Plan, to an Administrative Claim in the

aggregate amount of all such returned payments to the extent (but only to the extent)

payments (I) that are required to be returned had been made under the Reimburse-

ment Order to such L/C Issuer to reimburse such L/C Issuer for amounts paid

Post-petition by such L/C Issuer in respect of non conforming or discrepant letters of

credit and (II) that were paid by an L/C Issuer at the Debtors' request with respect to

postpetition items received by the Debtors. Such Administrative Claim shall be paid

in full and in Cash pursuant to Section 2.1 of the Plan. Nothing in this paragraph or

in the preceding paragraph of this Order shall be construed as a determination by the

Court as to whether and to what extent payments under the Reimbursement Order

should or should not be returned nor shall this Order, in and of itself, constitute a

waiver or release of any of an L/C Issuer's liens and security interests under common

law, by statute, or under letter of credit agreement or cash management agreements

71

with any of the Debtors or other credit agreements (provided that the same, if any, shall be treated as set forth in the Plan).

(c)     Notwithstanding any provision of the Plan or this Order to the contrary, the confirmation and effectuation of the Plan as modified hereby, shall not release, reduce or discharge any Directors and Officers Liability Insurance carrier of the debtors from such carrier's obligations to satisfy, in whole or in part, any claim asserted in any Securities Action and/or by any holder of a Subordinated Securities Claim.

54.     Modifications To The Original Plan.  At the request of the Debtors, the Original Plan is hereby modified pursuant to section 1127(a) of the Bankruptcy Code as follows:[5]

(a)     The following change shall be made to the list of Plan Exhibits set forth in the Table of Contents of the Plan:  "List of Qualifying Real Estate Intentionally Omitted."

(b)     **1.4     "ADR Procedures"** means any alternative dispute resolution procedures approved by the Bankruptcy Court prior to the Effective Date, including, but not limited to, those approved in the following orders: (i) Order Approving Procedures for (A) Liquidating and Settling Personal Injury Claims Through Direct Negotiation and/or Alternative Dispute Resolution and/or (B) Modifying the Automatic Stay to Permit Certain Litigation with Respect to such Such Claims to Proceed dated July 17, 2002; (ii) Order Pursuant to 11 U.S.C. § 105(a) to Modify Personal Injury Claims Resolution Procedures to Require the Participation of Third Party Indemnitors and Insurance Carriers in Mediations and Arbitrations of Claims dated August 29, 2002; and (iii) Order Pursuant to 11 U.S.C.

---

[5]     Additions are indicated with a double underlining; deletions are indicated with a strike-through.

§§ 105, 363, 502 and 503 and Rule 9019(b) of the Federal Rules of Bankruptcy
Procedure Authorizing Debtors (A) to Compromise or Settle Certain Prepetition
Claims Without Further Court Approval and (B) to Establish Alternative Dispute
Resolution Procedures for Disputed Claims dated January 28, 2003.

> (c) **1.10 "Avoidance Claims"** means Causes of Action
against Persons arising under any of sections 510, 547, 548, 549, 550 and 551 (to the
extent the ~~later~~ latter two sections are applicable to the other statutory sections
referred to in this Article 1.10) of the Bankruptcy Code, or under similar or related
state or federal statutes and common law, including fraudulent transfer laws, whether
or not litigation has been commenced as of the Confirmation Date to prosecute such
Avoidance Claims.

> (d) **1.34 "Continuing Indemnification Rights"** means
those Indemnification Rights held by any Indemnitee who is a Released Party and
serves as a director, officer or employee (or in any similar capacity) of the Reorga-
nized Debtors immediately following the occurrence of the Effective Date together
with any Indemnification Rights held by any Indemnitee on account of events
occurring on or after the Petition Date, provided that no Person who is or becomes
the subject of a Trust Claim shall have any Continuing Indemnification Rights with
respect to such Trust Claim.

> (e) **1.38 "Cure"** means the payment or other honor of
all obligations required to be paid or honored in connection with assumption of an
executory contract or unexpired lease pursuant to Section 365 of the Bankruptcy
Code, including (a) the cure of any non-monetary defaults to the extent required, if
at all, pursuant to ~~Section~~ section 365 of the Bankruptcy Code, and (b) with respect
to monetary defaults, the distribution within a reasonable period of time following
the Effective Date of Cash, or such other property as may be agreed upon by the
parties or ordered by the Bankruptcy Court, with respect to the assumption (or
assumption and assignment) of an executory contract or unexpired lease, pursuant to
section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary
obligations or such other amount as may be agreed upon by the parties, under such
executory contract or unexpired lease, to the extent such obligations are enforceable
under the Bankruptcy Code and applicable non-bankruptcy law; provided, further,
that in the event that a Debtor assumes an unexpired lease or executory contract, any
guarantee(i) provided by another Debtor related to such unexpired lease or executory
contract, or (ii) in connection with any industrial revenue bonds, shall be deemed
Reinstated under the Plan if the failure of such guarantee to remain in force and

73

effect would constitute a default under such assumed unexpired lease or executory contract or such industrial revenue bonds.

(f)  **1.64  "Exit Financing Facility"** means a new financing facility, a copy of which will be attached hereto as Exhibit D-1 2, pursuant to the terms of (a) that certain Commitment Letter, dated January 13, 2003, between Kmart, as borrower, and General Electric Capital Corporation, Fleet Retail Finance, Inc., and Bank of America, N.A., as initial lenders, as the same may be amended, modified, or supplemented from time to time, a copy of which is attached hereto as Exhibit D-2 1, and (b) any and all additional documents related thereto filed in accordance with Article 7.12 of this Plan.

(g)  **1.106  "Other Unsecured Claim"** means, subject to Article 5.6 hereof, a Claim that is not an Administrative Claim, General Unsecured Convenience Claim, Intercompany Claim, Other Priority Claim, PBGC Claim, Priority Tax Claim, Prepetition Lender Claim, Prepetition Note Claim, Secured Claim, Subordinated Securities Claim, Trade Vendor/Lease Rejection Claim, or Trust Preferred Obligation.

(h)  **1.107  "Other Unsecured Claim Cash Payment Amount"** means the Cash to be paid to all holders of Allowed Other Unsecured Claims on the third anniversary of the Effective Date (or, if such date is not a Business Day, the next Business Day), in an amount equal to (i) the product of (a) the estimated, mid-range value (as set forth in the Disclosure Statement); of the New Holding Company Common Stock to be distributed to holders of Trade Vendor/Lease Rejection Claims multiplied by (b) a fraction, the numerator of which is equal to the aggregate amount of all Allowed Other Unsecured Claims, and the denominator of which is equal to the aggregate amount of all Allowed Trade Vendor/Lease Rejection Claims and Allowed Other Unsecured Claims, plus (ii) an amount equivalent to interest on the amount calculated pursuant to the preceding clause at an annual rate of 4% from and after the Effective Date through and including the third anniversary of the Effective Date. The Other Unsecured Claim Cash Payment Amount shall be subject to such other terms and conditions as may be necessary and appropriate to effectuate payment thereof or to comply with applicable law.

(i)  **1.109  "Other Unsecured Claim Estimation Procedure"** means a procedure approved by the Bankruptcy Court on or before the Effective Date providing for the expedited estimation, for distribution purposes, of

74

Other Unsecured Claims held by Other Unsecured Claimholders who make the Other Unsecured Claim Election.

           (j)    **1.125  "Prepetition Notes"** means, collectively, (a)(i) the 12.5% Notes due March 1, 2005 in the aggregate principal amount of $100,000,000; (ii) the 8.125% Notes due December 1, 2006 in the aggregate principal amount of $200,000,000; (iii) the 7.75% Notes due October 1, 2012 in the aggregate principal amount of $157,257,000; (iv) the 8.25% Notes due January 1, 2022 in the aggregate principal amount of $68,055,000; (iv) the 8.375% Notes due July 1, 2022 in the aggregate principal amount of $85,550,000; (v) the 7.95% Notes due February 1, 2023 in the aggregate principal amount of $259,800,000; and (vi) the Series C Medium Term Notes and Series D Medium Term Notes  in the aggregate principal amount of $222,935,000, in each case issued by Kmart pursuant to that certain indenture dated as of February 1, 1985, between Kmart and The Bank of New York, as original indenture trustee, as thereafter succeeded in that capacity by Wilmington Trust Company as successor indenture trustee, as such indenture may have been amended, supplemented, or otherwise modified from time to time, including, but not limited to, that certain First Supplemental Indenture dated as of March 1, 1991; (b)(i) the 8.375% Notes due December 1, 2004 in the aggregate principal amount of $300,000,000; (ii) the 9.375% Notes due February 1, 2006 in the aggregate principal amount of $400,000,000; and (iii) the 9.875% Notes due June 15, 2008 in the aggregate principal amount of $430,000,000; in each case issued by Kmart pursuant to that certain indenture dated as of December 13, 1999, between Kmart and The Bank of New York, as original indenture trustee, as thereafter succeeded in that capacity by Wilmington Trust Company as successor indenture trustee, as such indenture may have been amended, supplemented, or otherwise modified from time to time, including, but not limited to, that certain First Supplemental Indenture dated as of December 13, 1999; that certain Second Supplemental Indenture, dated as of January 30, 2001; and that certain Third Supplemental Indenture dated as of June 19, 2001; and(c) the Commercial Development Revenue Refunding Bonds (Kmart Corporation Project) Series 1994 in the aggregate outstanding principal amount of $1,800,000.00, issued under or in connection with the trust indenture dated as of November 1, 1994 by and between The County Commission of Harrison County, as issuer, and J.P. Morgan Trust Company, National Association (as successor trustee), as indenture trustee, as thereafter succeeded in that capacity by Wilmington Trust Company as successor indenture trustee, and all of the right, title and interest of Harrison County in and under the Loan Agreement and the Promissory Note made between Kmart and The County Commission of Harrison County; and (d) the Industrial Development Revenue Refunding Bonds (Kmart Corporation Project) Series 1994 in the aggregate outstanding principal amount of $2,375,000.00,

issued under or in connection with the trust indenture dated as of October 1, 1994 by and between The Industrial Development Authority of the City of Liberty, Missouri, as issuer, and UMB Bank, N.A., as indenture trustee, and all of the right, title, and interest of The Industrial Development Authority of the City of Liberty, Missouri in and under the Loan Agreement and the Promissory Note made between Kmart and The Industrial Development Authority of the City of Liberty, Missouri.

> (k)    1.131 ~~"Qualifying Real Estate" means any (i) real estate lease, including a capital lease, under which a Debtor is a lessee, or (ii) real estate owned by a Debtor, in each case as identified on Exhibit F to be filed on or before the Exhibit Filing Date. Qualifying Real Estate includes, but is not limited to, real property interests pertaining to stores to be closed pursuant to the Debtors' 2003 store closing program.~~

> (l)    ~~1.137 "Responsible Officer" means the person designated by the board of directors of Kmart, after consultation with the Statutory Committees, to serve as the chief responsible officer and decision-maker for the Estates of the Debtors possessing Qualifying Real Estate from and after the Effective Date.~~

> (m)    ~~1.146~~1.144    "Securities Action" means any Cause of Action by a Person, other than by or on behalf of a Debtor, against any Person other than a Debtor arising out of or related to a Person's ownership of Interests, including Existing Common Stock, including, without limitation, the following actions, (i) those certain class actions on behalf of purchasers of securities who purchased such securities between March 13, 2001 and May 15, 2002 as such class actions were amended and consolidated by pleading filed on ~~October 15~~November 1, 2002 in the United States District Court for the Eastern District of Michigan; (ii) a class action of behalf of participants in or beneficiaries of the Kmart Corporation Retirement Savings Plan filed on March 18, 2002 in the United States District Court for the Eastern District of Michigan; (iii) an action on behalf of three limited partnerships that purchased stock of BlueLight.com filed on April 26, 2002 in the United States District Court for the Eastern District of Michigan; and (iv) an action filed on February 14, 2003 by the Softbank Funds against Charles Conaway in the Circuit Court of Cook County, Illinois, Case No. 03L1875.

> (n)    ~~1.159~~ 1.157    "Trust Assets" means ~~those assets, including~~ the Trust Claims, and any assets to be transferred to and owned by the Kmart Creditor Trust pursuant to Article 11.2 of this Plan.

(o)   ~~1.160~~ 1.158   "**Trust Claims**" means any and all Causes of Action, other than Securities Actions, against any Person or entity arising from, in connection with, or relating to the subject matters of the Investigations which, for purposes hereof, means the Accounting and Stewardship Investigations, including all matters authorized by order entered by the Bankruptcy Court on September 4, 2002 approving the participation, on a joint interest basis, of the Statutory Committees in said Investigations, and including all matters arising from, in connection with, or relating to the subject matter of responses to the Government Inquiries (as each of such terms is defined in the Disclosure Statement).

(p)   **2.1**   **Administrative Claims.** Subject to the provisions of Article X of this Plan, on the first Distribution Date or Periodic Distribution Date occurring after the later of (a) the date an Administrative Claim becomes an Allowed Administrative Claim or (b) the date an Administrative Claim becomes payable pursuant to any agreement between a Debtor (or a Reorganized Debtor) and the holder of such Administrative Claim, an Allowed Administrative Claimholder in the Chapter 11 Cases shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtors (or the Reorganized Debtors) and such Claim-holder shall have agreed upon in writing; provided, however, that (x) Claimholders of Claims arising under the DIP Facility shall be deemed to have Allowed Claims as of the Effective Date in such amount as to which the Debtors and such Claimholders shall have agreed upon in writing or as determined by the Bankruptcy Court, which DIP Facility Claims shall be paid in accordance with Article 10.1 of this Plan, (y) the Plan Investors shall be deemed to have an Allowed Plan Investor Claim arising under the Investment Agreement in such amount as to which the Debtors and the Plan Investors shall have agreed upon in writing or as fixed by the Bankruptcy Court, which Plan Investor Claim shall be paid in full in Cash on the Effective Date, and (z) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

(q)   **2.2**   **Priority Tax Claims.** Commencing on the first Periodic Distribution Date occurring after the later of (a) the date a Priority Tax Claim becomes an Allowed Priority Tax Claim or (b) the date a Priority Tax Claim first becomes payable pursuant to any agreement between a Debtor (or a Reorganized Debtor) and the holder of such Priority Tax Claim, at the sole option of the Debtors (or the Reorganized Debtors after the Effective Date), such Allowed Priority Tax

Claimholder shall be entitled to receive on account of such Priority Tax Claim, in full satisfaction, settlement, release and discharge of, and in exchange for, such Priority Tax Claim, (i) equal Cash payments on the last Business Day of each three-month period following the Effective Date, during a period not to exceed six years after the assessment of the tax on which such Claim is based, totaling the aggregate amount of such Claim plus simple interest on any outstanding balance from the Effective Date calculated ~~at the interest rate available on ninety (90) day United States Treasuries on the Effective Date~~ 100 basis points greater than the interest rate provided under the Exit Financing Facility as of the Effective Date, or such lesser rate agreed to by a particular taxing authority, (ii) such other treatment agreed to by the Allowed Priority Tax Claimholder and the Debtors (or the Reorganized Debtors), provided such treatment is on more favorable terms to the Debtors (or the Reorganized Debtors after the Effective Date) than the treatment set forth in clause (i) hereof, or (iii) payment in full in Cash.

(r)    **3.9    Class 9.** Class 9 consists of all Intercompany Claims that may exist against a particular Debtor.

(s)    **3.10    Class 10.** Class 10 consists of all Subordinated Securities Claims. *This Class is applicable only to the Chapter 11 Case of Kmart.*

(t)    **3.11    Class 11.** Class 11 consists of all Existing Common Stock and all Interests that may exist with respect to an Affiliate Debtor.

(u)    **3.12    Class 12.** Class 12 consists of all Other Interests. *This Class is applicable only to the Chapter 11 Case of Kmart.*

(v)    **5.4    Class 4 (Prepetition Note Claims).** The Prepetition Note Claims are Allowed Prepetition Note Claims in the aggregate amount of $2,279,319,538.47. Each Prepetition Note Claimholder shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, its Prepetition Note Claims, (a) on the Effective Date, its Pro Rata share of the Prepetition Noteholder Shares, subject to dilution, with the amount of each Prepetition Note Claimholder's Pro Rata share equal to the total number of Prepetition Noteholder Shares multiplied by a fraction, the numerator of which is equal to the amount of such Prepetition Noteholder's Allowed Prepetition Note Claim, and the denominator of which is equal to all Allowed Prepetition Note Claims, with the amount of such Prepetition Noteholder Shares being inclusive of New Holding Company Stock otherwise allocable to holders of Trust Preferred Obligations under Article 5.8 pursuant to the subordination provisions of all docu-

ments pertaining to the Trust Preferred Securities and evidencing the rights and obligations of the Trust Preferred Obligations, in each case payable directly to the Servicer of the Prepetition Note Claims for distribution to holders of the Prepetition Note Claims; (b) on the Effective Date and in lieu of any claim under Article 10.3 of this Plan by or on behalf of any indenture trustee for the Prepetition Notes, its Pro Rata share (calculated as provided in clause (a) of this Article 5.4) of Cash in an amount equal to the reasonable fees and expenses of any indenture trustee for the Prepetition Notes, as approved by the Bankruptcy Court pursuant to Section 1129(a)(4) of the Bankruptcy Code, not to exceed $1,500,000; and (c) commencing on the Distribution Date, its Pro Rata Share of the Trust Recoveries, if any, other than the rights to such Trust Recoveries to which holders of Subordinated Securities Claims and Existing Common Stock may be entitled pursuant to Article 5.10 and Article 5.11 of the Plan, with the amount of each Prepetition Note Claimholder's Pro Rata share equal to the total amount of such rights multiplied by a fraction, the numerator of which is equal to the amount of such Prepetition Note Claimholder's Allowed Prepetition Note Claim, and the denominator of which is equal to the sum of all Allowed Non-Lender Claims, with such consideration representing a compromise and settlement, pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, of the Prepetition Lender Claims, including such Claims relating to guarantees by certain Affiliate Debtors of Kmart's obligations under the Prepetition Credit Agreements and issues related to the substantive consolidation of the Debtors as contemplated by this Plan. Notwithstanding anything in this Article 5.4 to the contrary, any Prepetition Note Claims held by the Debtors shall be deemed cancelled as of the Effective Date, and the Debtors shall not receive or retain any property or interest in property on account of such Prepetition Note Claims under this Plan. The calculation of the Pro Rata interests of other Prepetition Note Claimholders called for in this Article 5.4 shall be made as if the Prepetition Note Claims held by the Debtors were not outstanding as of the time of such calculation. Th In the event that the Class of Prepetition Notes rejects the Plan, holders of Trust Preferred Obligations shall not receive or retain any property or interest in property on account of such Obligations under the Plan.

> (w)    **5.6    Class 6 (Other Unsecured Claims).** Except as otherwise provided in and subject to Article 9.8 of this Plan, each Other Unsecured Claimholder holding an Allowed Other Unsecured Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Other Unsecured Claim, (a) on the third anniversary of the Effective Date (or, if such date is not a Business Day, the next Business Day), its Pro Rata share of the Other Unsecured Claim Cash Payment Amount to be paid hereunder, with the amount of each Other Unsecured Claimholder's Pro Rata share equal to the amount of the Other

Unsecured <u>Claim</u> Cash Payment Amount multiplied by a fraction, the numerator of which is equal to the amount of such Other Unsecured Claimant's Allowed Other Unsecured Claim, and the denominator of which is equal to the aggregate amount of all Allowed Other Unsecured Claims, <u>provided, however,</u> that, in the event an Other Unsecured Claimholder makes the Other Unsecured Claim Election, such Other Unsecured Claimholder shall be deemed (i) to be a Trade Vendor/Lease Rejection Claimholder and shall receive, in lieu of its Pro Rata share of the Other Unsecured Claim Cash Payment Amount, the Trade Vendor/Lease Rejection Claimholder treatment as provided for in this Plan, and (ii) to consent to the Other Unsecured Claim Estimation Procedure, and (b) commencing on the first Periodic Distribution Date occurring after the later of (x) the date an Other Unsecured Claim becomes an Allowed Other Unsecured Claim or (y) the date an Other Unsecured Claim becomes payable pursuant to any agreement between the Debtors (or the Reorganized Debtors) and the holder of such Other Unsecured Claim, its Pro Rata share of the Trust Recoveries, if any, other than the rights to such Trust Recoveries to which holders of Subordinated Securities Claims and Existing Common Stock may be entitled pursuant to <u>Article 5.10</u> and <u>Article 5.11</u> of the Plan, with the amount of each Other Unsecured Claimholder's Pro Rata share equal to the total amount of such rights multiplied by a fraction, the numerator of which is equal to the amount of such Other Unsecured Claimholder's Allowed Other Unsecured Claim, and the denominator of which is equal to the aggregate amount of all Allowed Non-Lender Claims, with such consideration representing a compromise and settlement, pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, of the Prepetition Lender Claims, including such Claims relating to guarantees by certain Affiliate Debtors of Kmart's obligations under the Prepetition Credit Agreements and issues related to the substantive consolidation of the Debtors as contemplated by this Plan. Each of the Other Unsecured Claimholder's Pro Rata share of the Other Unsecured Claim Cash Payment Amount shall be an obligation of New Holding Company and New Operating Company. The right of a holder of an Allowed Other Unsecured Claim to receive its Pro Rata share of the Other Unsecured Claim Cash Payment Amount shall be personal to such holder and shall be non-transferable except upon death of the interest holder or by operation of law.

      (x)    **5.7**    **Class 7 (General Unsecured Convenience Claims)**. Except as otherwise provided in and subject to <u>Article 9.8</u> of this Plan, on the first Periodic Distribution Date occurring after the later of (i) the date a General Unsecured Convenience Claim becomes an Allowed General Unsecured Convenience Claim or (ii) the date a General Unsecured Convenience Claim becomes payable pursuant to any agreement between the Debtors (or the Reorganized Debtors) and the holder of such General Unsecured Convenience Claim, the holder of an

Allowed General Unsecured Convenience Claim shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such General Unsecured Convenience Claim, Cash equal to (a) six and one-quarter percent (6.25%) of the amount of such Allowed Claim if the amount of such Allowed Claim is less than or equal to $30,000 or (b) $1,875 if the amount of such Allowed Claim is greater than $30,000 and the holder of such Claim has made the Convenience Class Election. Any Trade Vendor/Lease Rejection Claims or Other Unsecured Claims that are treated as General Unsecured Convenience Claims shall not otherwise be treated as Trade Vendor/Lease Rejection Claims or Other Unsecured Claims under this Plan; provided, however, that the holder of any General Unsecured Convenience Claim that would otherwise constitute a Trade Vendor/Lease Rejection Claim under this Plan and that is in an amount equal to or less than $30,000 may elect to be treated as a Trade Vendor/Lease Rejection Claimholder and shall receive in lieu of any payment under this Article 5.7, the Trade Vendor/Lease Rejection treatment as provided for in this Plan.

(y)    **6.5    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.** Class 10, Class 11, and Class 12 are deemed to reject the Plan, therefore. Therefore, the Debtors will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.

(z)    **7.1(b)    New Holding Company and New Operating Company.** Subject to the Restructuring Transactions contemplated by this Plan, on, or as soon as reasonably practicable after, the Effective Date, all appropriate actions shall be taken consistent with this Plan to (i) form New Holding Company and New Operating Company pursuant to their respective Articles of Incorporation and By-Laws, (ii) contribute or transfer all of the assets of the Debtors, other than the Qualifying Real Estate and the Trust Assets, to New Operating Company and/or such other Reorganized Debtors or Affiliates as contemplated by the Restructuring Transactions and as is necessary to effect the Exit Financing Facility, and (iii) issue all of the New Operating Company Common Stock to New Holding Company. The Qualifying Real Estate shall be treated as specified in Article 12.1 of this Plan, and the Trust Assets shall be transferred to the Kmart Creditor Trust as specified in Article 11.2 of this Plan. As of the Effective Date, the Reorganized Debtors shall be obligated to provide funds, as needed, to the Estates of those Debtors that hold Qualifying Real Estate in an aggregate amount sufficient to pay Administrative and Cure Claims of such Estates, including obligations contemplated by section 365 of the Bankruptcy Code, until such time as the Qualifying Real Estate has been assumed, rejected or otherwise disposed of pursuant to Article 12.1 of this Plan and such Estates have been fully administered.

81

(aa)    **7.2    Substantive Consolidation.** This Plan provides for the substantive consolidation of the Estates, but only for purposes of effectuating the settlements contemplated by, and making distributions to holders of Claims under, this Plan, and not for voting purposes. For such limited purposes, on the Effective Date, (a) all guaranties of any Debtor of the payment, performance, or collection of another Debtor with respect to any Class of Claims or Interests shall be deemed eliminated and cancelled; (b) any obligation of any Debtor and all guaranties with respect to any Class of Claims or Interests executed by one or more of the other Debtors and any joint or several liability of any of the Debtors shall be treated as a single obligation, and any obligation of two or more Debtors, and all multiple Impaired Claims against Debtors on account of such joint obligations, shall be treated and Allowed only as a single Claim against the consolidated Debtors; and (c) each Claim filed in the Chapter 11 Cases of any Debtor shall be deemed filed against the consolidated Debtors and shall be deemed a Claim against and an obligation of the consolidated Debtors. Except as set forth in this Article, such substantive consolidation will not (other than for purposes related to this Plan) (a) affect the legal and corporate structures of the Debtors or Reorganized Debtors, subject to the right of the Debtors or Reorganized Debtors to effect the Restructuring Transactions contemplated by this Plan, (b) cause any Debtor to be liable for any Claim or Interest under this Plan for which it otherwise is not liable, and the liability of any Debtor for any such Claim or Interest will not be affected by such substantive consolidation, (c) except as otherwise stated in this Plan, affect Intercompany Claims of Debtors against Debtors, and (d) affect Interests in the Affiliate Debtors except as otherwise may be required in connection with the Restructuring Transactions contemplated by this Plan; provided, however, that with respect to any holder of a Claim in a Class that rejects the Plan of such Affiliate Debtor ("Rejecting Class Affected Claims") (a) who has not consented to the treatment of such holder's Claims under such Class of the Plan, as evidenced either by an objection to the substantive consolidation provisions of the Plan or a timely vote to reject the Plan, and (b) whose Rejecting Class Affected Claim has also been asserted against more than one Debtor ("Affiliate Debtor Affected Claims" and, together with Rejecting Class Affected Claims, "Affected Claims"), such holder shall receive on account of, and in full satisfaction, settlement, release, and discharge of, and in exchange for, all Affected Claims, an amount (whether higher or lower than the distribution that would have been afforded by the Plan under substantive consolidation) that the Bankruptcy Court determines such holder would have been entitled to receive under the Plan on account of all such Affected Claims had substantive consolidation not occurred; provided further, that such distribution shall be in the form of (i) New Holding Company Common Stock in an amount not to exceed the amount of New Holding Company Common Stock

82

<u>that would have been issued to such holder if substantive consolidation had been implemented and effected with respect to such Affected Claims (the "Original Plan Distribution Amount") and (ii) to the extent, if any, that the Affected Claims would have been entitled to a distribution greater than the Original Plan Distribution Amount absent substantive consolidation, an amount of Cash equal to the amount that the Bankruptcy Court determines such holder would have been entitled to receive under the Plan on account of all such Affected Claims had substantive consolidation not occurred, after taking into account the distributions referred to in subparagraph (i) above</u>. Notwithstanding anything herein to the contrary, the Debtors may elect in their sole and absolute discretion, at any time through and until the Effective Date, to substantively consolidate the Estates for additional purposes, including for voting purposes; provided, however, that such further substantive consolidation does not alter the treatment of the Prepetition Lenders, holders of Prepetition Note Claims, or holders of Trade Vendor/Lease Rejection Claims called for by this Plan as filed on February 25, 2003, and; provided, further, that nothing herein shall impair the Plan Investors' rights under the Investment Agreement. Should the Debtors make such election, the Debtors will not, nor will they be required to, resolicit votes with respect to this Plan. Substantive consolidation shall not alter the distributions set forth herein. In the event that the Debtors do elect to substantively consolidate the Estates, the Disclosure Statement and this Plan shall be deemed to be a motion requesting that the Bankruptcy Court approve such substantive consolidation.

(ab) **7.5(b) Directors of New Holding Company.** On the Effective Date, the term of the current members of the board of directors of Kmart will expire ~~upon the designation by such board, and the approval by the Bankruptcy Court, of the Responsible Officer~~. The initial board of directors of New Holding Company, whose term will commence upon the Effective Date, shall consist of nine (9) members. One (1) member of senior management of the Reorganized Debtors will serve on the initial board of directors of New Holding Company. Other board members shall include (i) four (4) directors selected by the Plan Investors, at least one of whom shall not be an officer or employee of any of the Plan Investors or a family member of any of the foregoing, (ii) two (2) directors selected by the Unsecured Creditors' Committee, and (iii) two (2) directors selected by the Financial Institutions' Committee, neither of which shall be an officer or employee of ESL Investments, Inc. or a family member thereof; provided that the board of directors, collectively, including any required committee thereof, shall comply with any other qualification, experience, and independence requirements under applicable law, including the Sarbanes-Oxley Act of 2002 and the rules then in effect of the stock exchange or quotation system (including the benefit of any transition periods

83

available under applicable law) on which the New Holding Company Common
Stock is listed or is anticipated to be listed, when such Stock is listed. The Persons
responsible for designating board members shall designate their board members by
written notice filed with the Bankruptcy Court by a date that is at least seven days
prior to the Voting Deadline, provided, however, that if they fail to file and give such
notice, the Debtors will initially designate such members by announcing their
identities at the Confirmation Hearing. Directors of New Holding Company ap-
pointed in accordance with this Article shall serve an initial term for a period from
the Effective Date through the date of the second annual meeting after the Effective
Date. Thereafter, and subject to New Holding Company's rights to amend its
bylaws, directors shall serve one (1) year terms (with such subsequent terms subject
to election by shareholder vote) with each such term expiring at the conclusion of the
next annual meeting of shareholders. In the event, prior to the Effective Date, a
person designated to be a member of New Holding Company's board of directors
dies, is disabled, or otherwise becomes unable to fulfill the role, the Person designat-
ing such member will designate a replacement for such director. In the event, after
the Effective Date and prior to the second annual meeting that occurs after the
Effective Date, of the death, disability, resignation, or removal of a member of the
board of directors, the directors designated by the Person who designated the director
whose vacancy is sought to be filled will designate a replacement for such director,
which replacement will be reasonably satisfactory to New Holding Company.

      (ac)   **7.7**   **Employment, Retirement, Indemnification
and Other Agreements, and Incentive Compensation Programs.** To the extent
that any of the Debtors have in place as of the Effective Date employment, retire-
ment, indemnification and other agreements with their respective active directors,
officers and employees who will continue in such capacities (or similar capacities)
after the Effective Date, or retirement income plans, welfare benefit plans and other
plans for such Persons, such agreements, programs and plans shall remain in place
after the Effective Date, and the Reorganized Debtors will continue to honor such
agreements, programs, and plans. Such agreements and plans may include equity,
bonus, and other incentive plans in which officers and other employees of the
Reorganized Debtors may be eligible to participate; provided, however, that pursuant
to the Management Compensation Plan, there may be reserved for certain members
of management, directors, and other employees of the Reorganized Debtors up to
10% of the shares of New Holding Company Common Stock, exclusive of any
shares offered as incentive compensation in any employment agreement of any
officer that is to be assumed pursuant to Article VIII of this Plan, and other securities
and other components of compensation to be paid to management after the Effective
Date; and provided further that the Debtors' existing deferred compensation plans

shall be terminated and the funds held pursuant thereto shall be distributed to the respective account holders other than any account holder who the Trustee has identified as a potential defendant in any Cause of Action arising out of the Trust Claims, in which case the funds of such account holder shall be held in escrow by the Kmart Creditor's Trust pending resolution of any Trust Claims against such account holder. After the Effective Date, the Reorganized Debtors shall each have the authority, consistent with the applicable agreements, to terminate, amend or enter into employment, retirement, indemnification and other agreements with their respective active directors, officers and employees and to terminate, amend or implement retirement income plans, welfare benefit plans and other plans for active employees. Notwithstanding anything to the contrary herein, following the Effective Date of the Plan, with respect to the payment of "retiree benefits" as defined in section 1114 of the Bankruptcy Code, such payment shall continue at the levels established pursuant to subsections (e)(1)(B) or (g) of section 1114 of the Bank-ruptcy Code, at any time prior to confirmation of this Plan, for the duration of the periods the Debtors have obligated themselves to provide such benefits, if any.

(ad)   **7.10   Cancellation of Existing Securities and Agreements.** On the Effective Date, except as otherwise specifically provided for herein or as otherwise required in connection with any Cure, (a) the Existing Securities and any other note, bond, indenture, or other instrument or document evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors, except such notes or other instruments evidencing indebtedness or obligations of the Debtors that are Reinstated under this Plan, will be cancelled, and (b) the obligations of, Claims against, and/or Interests in the Debtors under, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the Existing Securities and any other note, bond, indenture, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors, except such notes or other instruments evidencing indebtedness or obligations of the Debtors that are Reinstated under this Plan, as the case may be, will be released and discharged; provided, however, that any agreement that governs the rights of the Claimholder and that is administered by an indenture trustee, an agent, or a servicer (each hereinafter referred to as a "Servicer") will continue in effect solely for purposes of (i) allowing such Servicer to make the distributions to be made on account of such Claims under this Plan as provided in Article IX of this Plan and (ii) permitting such Servicer to maintain any rights or liens it may have for fees, costs, and expenses under such Indenture or other agreement; provided, further, that the preceding proviso will not affect the discharge of Claims against or Interests in the Debtors under the Bank-ruptcy Code, the Confirmation Order, or this Plan, or result in any expense or

85

liability to the Reorganized Debtors. The Reorganized Debtors will not have any obligations to any Servicer (or to any Disbursing Agent replacing such Servicer) for any fees, costs, or expenses except as expressly provided in **Article 9.5** hereof; provided, however, that nothing herein will preclude any Servicer (or any Disbursing Agent replacing such Servicer) from being paid or reimbursed for prepetition or postpetition fees, costs, and expenses from the distributions being made by such Servicer (or any Disbursing Agent replacing such Servicer) pursuant to such agreement in accordance with the provisions set forth therein, all without application to or approval by the Bankruptcy Court.

(ac)    7.13    **Trade Vendors' Lien Program.** On the Effective Date, the Reorganized Debtors shall grant to certain vendors who provide retail merchandise to the Reorganized Debtors on credit after the Effective Date, or who have provided merchandise to the Debtors after the Petition Date and before the Effective Date on credit which is not paid for as of the Effective Date, a Trade Vendors' Lien pursuant to the terms attached hereto as Exhibit J-2 (such terms are generally described in Exhibit J-1). Each person or entity issuing securities under the Plan, any entity acquiring property under the Plan, and any creditor and/or equity security holder of the Debtors or Reorganized Debtors, shall be deemed to contractually subordinate any present or future claim, right, or other interest it may have in and to any proceeds received from the disposition, release, or liquidation of any ~~real properties subject to the Trade Vendors' Lien, to the claims of~~ of the Debtors' leased stores that are open and operating stores as of the Effective Date (the "Open Store Leases"), to the parties secured by the Trade Vendors' Lien; provided, however, that in no case shall the lenders under the Exit Financing Facility be deemed subordinated in this regard; and provided, further, that so long as the Trade Vendors' Lien has not been terminated or has not expired, (i) neither the Debtors nor the Reorganized Debtors may encumber, sell, lease, transfer or otherwise dispose of or take other action to impair the subordination granted hereby with respect to more than 20% in fair market value of the ~~leases subject to this Article 7.13~~ Open Store Leases, unless the proceeds of any such transactions in excess of such 20% threshold are held in an escrow account for the ratable benefit of the parties with an interest or claim with respect to such proceeds pursuant to the terms of the Collateral Trust Agreement attached hereto as Exhibit J-2, and (ii) any loan or investment by the Plan Investors will be subject to the subordination set forth in this provision (except with respect to any loan or investment to the extent that the amount of such loan or investment plus the amount of all other investments made by the Plan Investors pursuant to the Investment Agreement exceeds $280 million (giving credit for and including in the calculation all investments and loans made by the Plan Investors or loans or investments made by third parties and guaranteed by the Plan Investors, but excluding the

value of any Class 3, Class 4 and Class 5 claims which the Plan Investors may hold)). Such contractual subordination shall terminate upon termination or expiration of the Trade Vendors' Lien.

(af)    7.14    **Preservation of Causes of Action.** In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in this Plan with respect to the Kmart Creditor Trust, the Reorganized Debtors will retain and may (but are not required to) enforce all Retained Actions, except that the Debtors shall and do hereby waive all Avoidance Claims as of the Effective Date (other than Avoidance Actions under Section 549 of the Bankruptcy Code with respect to the matters subject to that certain case captioned Capital Factors, Inc. v. Kmart Corporation, Case No. 02 C 1264 (N.D. Ill. 2002)); provided, however, that such waiver does not include Avoidance Claims against Persons who are parties to Causes of Action involving the Debtors and ~~is~~ are pending on the Effective Date, nor does it include Causes of Action against any Persons who may be the subject, at any time, of Trust Claims. The Debtors or the Reorganized Debtors, in their sole and absolute discretion, will determine whether to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), and will not be required to seek further approval of the Bankruptcy Court for such action. The Reorganized Debtors or any successors may pursue such litigation claims in accordance with the best interests of the Reorganized Debtors or any successors holding such rights of action.

(ag)    7.18    **Exemption From Certain Transfer Taxes and Recording Fees.** Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from a Debtor to a Reorganized Debtor or to any other Person or entity pursuant to this Plan, or any agreement regarding the transfer of title to or ownership of any of the Debtors' real or personal property will not be subject to any document recording tax, stamp tax, ~~conveyance fee, intangibles or similar tax, mortgage tax, stamp act,~~ real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording ~~fee~~ tax, or other similar tax or governmental assessment, and the Confirmation Order will direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

(ah)    8.1(c)    **Other Executory Contracts or Unexpired Leases.** Except as otherwise provided in this Article 8.1(c), each Other Executory Contract or Unexpired Lease as to which any of the Debtors is a party (including, but not limited to, (x) guaranties, including any guaranties by any of the Debtors with

87

respect to real estate leases of former subsidiaries and businesses of any of such Debtors, (y) any obligations under leases assigned by the Debtors prior to the Petition Date (or agreements guarantying the payment of rent or performance thereunder), and (z) those certain Lease Guaranty, Indemnification and Reimbursement Agreements dated as of November 23, 1994, November 9, 1994, and May 24, 1995) shall be deemed automatically rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless such Other Executory Contract or Unexpired Lease (i) shall have been previously assumed by the Debtors by order of the Bankruptcy Court, (ii) is the subject of a motion to assume pending on or before the Effective Date, (iii) is listed on the schedule of assumed Other Executory Contracts or Unexpired Leases annexed hereto as Exhibit L-3, or (iv) is otherwise assumed pursuant to the terms of this Plan. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections and assumptions contemplated hereby pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Each Other Executory Contract or Unexpired Lease assumed pursuant to this Article 8.1(c) shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of this Plan, or any order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law. The Debtors reserve the right to file a motion on or before the Confirmation Date to assume or reject any Other Executory Contract or Unexpired Lease, including any Other Executory Contract or Unexpired Lease on Exhibit L-3. Unexpired leases to be assumed under this Article 8.1(c) shall be assumed by the particular Debtor that was obligated on such lease as of the Petition Date, without prejudice to the rights of such Debtor thereafter to assign such lease in accordance with applicable law. Notwithstanding anything in this Plan to the contrary, unexpired leases to be assumed under the Plan, other than Qualifying Real Estate, shall be identified on Exhibit L-3 by the Confirmation Date, provided that the assumption of such unexpired leases shall be effective as of the Effective Date. In the event the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming such unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

        (ai)   **8.2**   Payments Related to Assumption of Executory Contracts and Unexpired Leases. The provisions (if any) of each Intercompany Executory Contract, Intercompany Unexpired Lease, Employee-Related Agreement, or Other Executory Contract or Unexpired Lease to be assumed under this Plan which are or may be in default shall be satisfied solely by Cure. Any Person claiming that a monetary cure amount is due in connection with the assumption of any executory contract or unexpired lease as contemplated by section 365(b) of the

Bankruptcy Code must file a monetary cure claim with the Bankruptcy Court asserting all alleged amounts accrued through the Effective Date, if any (the "Cure Claim")"Cure Claim"), no later than forty-five (45) days after the Effective Date or, in the case of Qualifying Real Estate, no later than the objection deadline associated with the motion seeking to, among other matters, assume such Qualifying Real Estate (the "Cure(the "Cure Claim Submission Deadline") Deadline"). Any party failing to submit a Cure Claim by the Cure Claim Submission Deadline shall be forever barred from asserting, collecting, or seeking to collect any amounts relating thereto against the Debtors or Reorganized Debtors. In the case of a Cure Claim related to an unexpired lease of non-residential real property, such Cure Claim must include a breakdown by store by category of all amounts claimed, including, but not limited to, amounts for real estate taxes, common area maintenance, and rent. The Debtors shall have thirty (30) days from the Cure Claim Submission Deadline or the date a Cure Claim is actually filed, whichever is later, to file an objection to the Cure Claim. Any disputed Cure Claims shall be resolved either consensually by the parties or by the Bankruptcy Court. Disputed Cure Claims shall be set for status at subsequent hearings following the Cure Claim Submission Deadline with separate evidentiary hearings to be set by the Bankruptcy Court as needed. If the Debtors do not dispute a Cure Claim, then the Debtors shall pay the Cure Claim, if any, to the claimant within twenty (20) days of the Cure Claim Submission objection Deadline. Disputed Cure Claims that are resolved by agreement or Final Order shall be paid by the Debtors within twenty (20) days of such agreement or Final Order. The provisions (if any) of each Intercompany Executory Contract and Intercompany Unexpired Lease to be assumed under the Plan which are or may be in default shall be satisfied in a manner to be agreed to by the relevant Debtors and/or non-Debtor Affiliates.

(aj) **9.2** No Interest on Claims or Interests. Unless otherwise specifically provided for in this Plan or as otherwise required by Section 506(b) of the Bankruptcy Code, Confirmation Order, or the DIP Credit Agreement or a postpetition agreement in writing between the Debtors and a Claimholder or Interestholder, postpetition interest shall not accrue or be paid on Claims or Interests, and no Claimholder or Interestholder shall be entitled to interest accruing on or after the Petition Date on any Claim, right, or Interest. Additionally, and without limiting the foregoing, unless otherwise specifically provided for in this Plan or as otherwise required by Section 506(b) of the Bankruptcy Code, interest shall not accrue or be paid on any Disputed Claim or Disputed Interest in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest. Notwithstanding the foregoing, nothing in this Article 9.2 shall limit or impair any

Claimholder's rights to seek allowance of such interest as a part of an Allowed Claim to the extent provided in Section 506(b) of the Bankruptcy Code.

(ak)    9.3    Disbursing Agent. The Disbursing Agent shall make all distributions required under this Plan except with respect to a Prepetition Lender Claims and any holder of a Claim whose distribution is governed by an agreement and is administered by a Servicer, which distributions shall be deposited with the Prepetition Agent or appropriate Servicer, as applicable, who shall deliver such distributions to the holders of Claims in accordance with the provisions of this Plan and the terms of the governing agreement; provided, however, that if any such Servicer is unable to make such distributions, the Disbursing Agent, with the cooperation of such Servicer, shall make such distributions.

(al)    9.7    Delivery of Distributions. Distributions to Allowed Claimholders or Allowed Interestholders shall be made by the Disbursing Agent or the appropriate Servicer (a) at the addresses set forth on the proofs of claim filed by such Claimholders or Interestholders (or at the last known addresses of such Claimholders or Interestholders if no proof of claim is filed or if the Debtors have been notified in writing of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and the Disbursing Agent has not received a written notice of a change of address, or (d) in the case of a Claimholder or Interestholder whose Claim or Interest is governed by an agreement and administered by a Servicer, at the addresses contained in the official records of such Servicer. If any Claimholder's or Interestholder's distribution is returned as undeliverable, no further distributions to such Claimholder or Interestholder shall be made unless and until the Disbursing Agent or the appropriate Servicer is notified of such Claimholder's or Interestholder's then-current address, at which time all missed distributions shall be made to such Claimholder or Interestholder without interest. Amounts in respect of undeliverable distributions shall be returned to the Reorganized Debtors until such distributions are claimed. All funds or other undeliverable distributions returned to the Reorganized Debtors and not claimed within six months of return shall be distributed to the other creditors of the Class of which the creditor to whom the distribution was originally made is a member in accordance with the provisions of the Plan applicable to distributions to that Class. If, at the conclusion of distributions to a particular Class under the Plan and after consultation with the Post-Effective Date Committee (solely with respect to Trade Vendor/Lease Rejection Claims), the Reorganized Debtors reasonably determine that any remaining New Holding Company Common Stock or Cash allocated for such class is immaterial and would

90

thus be too impractical to distribute or would be of no benefit to its respective distributees, any such remaining New Holding Company Common Stock or Cash will revert to the Reorganized Debtors. Upon such reversion, the claim of any Claimholder or <u>Interestholder or</u> their successors with respect to such property shall be discharged and forever barred notwithstanding any federal or state escheat laws to the contrary.

(am)  **9.8(c)  Distributions After Allowance.** Payments and distributions from the Distribution Reserve to each respective Claimholder or Interestholder on account of a Disputed Claim or Disputed Interest, to the extent that it ultimately becomes an Allowed Claim or Allowed Interest, will be made in accordance with provisions of this Plan that govern distributions to such Claimholder or Interestholder. On the first Periodic Distribution Date following the date when a Disputed Claim or Disputed Interest becomes undisputed, noncontingent and liquidated, the Disbursing Agent will distribute to the Claimholder or Interestholder any Cash, New Holding Company Common Stock, or other property, from the Distribution Reserve that would have been distributed on the dates distributions were previously made to Claimholders and Interestholders had such Allowed Claim or Allowed Interest been an Allowed Claim or Allowed Interest on such dates. After a Final Order has been entered, or other final resolution has been reached with respect to all Disputed Claims or Interests, any remaining Cash, New Holding Company Common Stock, or other Property in the Distribution Reserve will be distributed Pro Rata to Claimholders and Interestholders in accordance with the other provisions of this Plan. Subject to <u>Article 9.2</u> hereof, all distributions made under this Article of this Plan on account of an Allowed Claim or Allowed Interest will be made together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the distributed property as if such Allowed Claim or Allowed Interest had been an Allowed Claim or Allowed Interest on the dates distributions were previously made to Allowed Claimholders and Allowed Interestholders included in the applicable class. The Disbursing Agent shall be deemed to have voted any New Holding Company Common Stock held in the Distribution Reserve in the same proportion as shares previously disbursed by the Disbursing Agent. The Servicers shall be deemed to have voted any New Holding Company Common Stock held by such ~~Servicer~~ <u>Servicers</u> in the same proportion as shares previously disbursed by such Servicers.

(an)  **10.1**  <u>DIP Facility Claim/Plan Investor Claim</u>. On the Effective Date, the DIP Facility Claim and Plan Investor Claim shall be allowed in an amount to be agreed upon by the Debtors and, as applicable, the DIP Lenders; and the Plan Investors, or as ordered by the Bankruptcy Court with notice to the

Creditors' Committees, not less than five (5) Business Days prior to the Effective Date, and all obligations (other than contingent indemnity obligations) of the Debtors under the DIP Facility and with respect to the Plan Investor Claim shall be paid in full in Cash on the Effective Date; provided, however, that with respect to letters of credit issued under the DIP Facility, such claims may be satisfied in full by the cash collateralization of such letters of credit or by procuring back-up letters of credit. Upon compliance with the foregoing sentence, all liens and security interests granted to secure such obligations shall be deemed cancelled and shall be of no further force and effect. To the extent that the DIP Lenders or the DIP Agent have filed or recorded publicly any liens and/or security interests to secure the Debtors' obligations under the DIP Facility, the DIP Lenders or the DIP Agent, as the case may be, shall take any commercially reasonable steps requested by the Debtors that are necessary to cancel and/or extinguish such publicly filed liens and/or security interests.

(ao)    **10.4**    Other Administrative Claims. All other requests for payment of an Administrative Claim (other than as set forth in Article 10.1, Article 10.2 or Article 10.3 of this Plan) must be filed, in substantially the form of the Administrative Claim Request Form attached hereto as Exhibit M, with the Claims Agent and served on counsel for the Debtors and the Plan Investors no later than forty-five (45) days after the Effective Date. Any request for payment of an Administrative Claim pursuant to this Article 10.4 that is not timely filed and served shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors. The Debtors or the Reorganized Debtors may settle an Administrative Claim without further Bankruptcy Court approval, subject to review by the Post-Effective Date Committee. Unless the Debtors or the Reorganized Debtors object to an Administrative Claim by the Claims/Interests Objection Deadline, such Administrative Claim shall be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim arising in the ordinary course of business as a result of retail merchandise or services provided by trade vendors or service providers which is paid or payable by the Debtors in the ordinary course of business.

(ap)    **11.2(b)**    Upon such transfer, the Debtors, the Debtors' Estates, the Disbursing Agent and the Reorganized Debtors shall have no other further rights or obligations with respect thereto. Notwithstanding the foregoing, the Reorganized Debtors shall make available to the Trustee reasonable access

during normal business hours, upon reasonable notice, to personnel and books and records of the Reorganized Debtors to enable the Trustee to perform the Trustee's tasks under the Trust Agreement and this Plan, and the Debtors and the Reorganized Debtors shall, in furtherance of the Order of the Bankruptcy Court ~~dated~~ entered on September 4, 2002, permit the Trustee and the Trust Advisory Board reasonable access to ~~evidence gathered and certain work product developed during the investi~~ ~~gations~~ information related to the Trust Claims that is reasonably requested by the Trustee, as more specifically set forth in the Trust Agreement; provided, however, that the Reorganized Debtors will not be required to make expenditures in response to such requests determined by them to be unreasonable. The Reorganized Debtors shall not be entitled to compensation or reimbursement (including reimbursement for professional fees) with respect to fulfilling their obligations as set forth in this Article. The Bankruptcy Court retains jurisdiction to determine the reasonableness of either a request for assistance and/or a related expenditure. Any requests for assistance shall not interfere with the Reorganized Debtors' business operations.

(aq)    11.3(c)    The Trustee shall have full authority to take any steps necessary to administer the Trust Agreement, including, without limitation, the duty and obligation to liquidate Trust Assets, ~~to administer the Other~~ ~~Unsecured Claim Cash Payment Amount (including pursuant to a services agreement~~ ~~with the Reorganized Debtors);~~ to make distributions therefrom in accordance with the provisions of this Plan and, if authorized by majority vote of those members of the Trust Advisory Board authorized to vote, to pursue and settle any Trust Claims. Upon such assignment, the Trustee, on behalf of the Kmart Creditor Trust, will assume and be responsible for any responsibilities, duties, and obligations of the Debtors with respect to the subject matter of the assignments, and the Debtors, the Disbursing Agent, and the Reorganized Debtors will have no further rights or obligations with respect thereto.

(ar)    11.5    **Distributions of Trust Assets.** Distributions of the Trust Recoveries to Claimholders and Interestholders in accordance with their interests in the Kmart Creditor Trust as set forth in this Plan shall be made at least semi-annually beginning with a calendar quarter that is not later than the end of the second calendar quarter after the Effective Date; provided, however, that the Trustee shall not be required to make any such semiannual distribution in the event that the aggregate proceeds and income available for distribution to such Claimholders and Interestholders is not sufficient, in the Trustee's discretion (after consultation with the Trust Advisory Board) to economically distribute monies, and in any case, in connection with any interim (as opposed to final) distribution, the Trustee shall retain at least the amount of funds paid to the Kmart Creditor Trust pursuant to Article

11.3(d)(i) and Article 11.3(d)(ii) of this Plan, provided, further, that with respect to distributions to Interestholders that cannot be economically distributed as aforesaid, the Trustee shall divide such aggregate amount of distributions into $50.00 increments and thereafter make such $50.00 distributions to Interestholders who otherwise were entitled to, but did not receive, a distribution under Article 5.11 and who are randomly selected by the Trustee. The Trustee will make continuing efforts to prosecute or settle the Trust Claims, make timely distributions, and not unduly prolong the duration of the Kmart Creditor Trust.

(as)   **12.1**   Revesting of Assets. Except as otherwise explicitly provided in this Plan, on the Effective Date, all property comprising the Estates (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in each of the Debtors that owned such property or interest in property as of the Effective Date, free and clear of all Claims, liens, charges, encumbrances, rights and Interests of creditors and equity security holders, provided, however, that (i) the Trust Claims shall be transferred to the Kmart Creditor Trust pursuant to Article 11.2 of this Plan; and (ii) ~~Qualifying Real Estate shall remain property of the Estate of the Debtor that owns such Qualifying Real Estate, and (iii)~~ assets intended to secure the Exit Financing Facility shall be transferred to such Debtors or other entities owned by New Operating Company as is necessary to effect the Exit Financing Facility. ~~The Responsible Officer of the Estates of such Debtors shall have full authority to assume and assign, reject, or otherwise dispose of the Qualifying Real Estate consistent with procedures approved by the Bankruptcy Court and sections 363 and 365 of the Bankruptcy Code. Landlords and other Persons, other than the Debtors, with interests in the Qualifying Real Estate shall retain the rights afforded them by sections 363 and 365 of the Bankruptcy Code through and including disposition of the Qualifying Real Estate. All liens and security interests, if any, in the Qualifying Real Estate shall remain intact and attach to the net proceeds therefrom to the same extent, validity, and relative priority as existed on the Effective Date, and all proceeds remaining in the Estates of such Debtors after satisfaction of all Allowed Secured Claims, if any, shall be transferred to the New Operating Company.~~ As of the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and Confirmation Order.

(at)   **12.2**   Discharge of the Debtors. Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the distributions and rights that are provided in

this Plan shall be in complete satisfaction, discharge, and release, effective as of the Confirmation Date (but subject to the occurrence of the Effective Date), of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Confirmation Date, any liability (including withdrawal liability) to the extent such Claims relate to services performed by employees of the Debtors prior to the Petition Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such Claim, debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such Claim, debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim, right, or Interest accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors, subject to the Effective Date occurring. ~~Notwithstanding anything in this Article 12.2 to the contrary, nothing in this Article shall discharge the Estate of any Debtor that holds Qualifying Real Estate from the obligations of such Estate contemplated by Article 7.1(b) of the Plan; provided however, that the satisfaction, discharge and release provided for in this Article 12.2 shall apply to any Claims or Causes of Action related to any specific Qualifying Real Estate immediately upon payment of all such obligations related to, and final disposition of, such specific Qualifying Real Estate.~~

(au)    **12.5**    <u>Release by Holders of Claims</u>. On the Effective Date, (a) each Person that votes to accept this Plan; and (b) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each entity (other than a Debtor), that has held, holds or may hold a Claim or Trust Preferred Obligation, in consideration for the obligations of the Debtors and the Reorganized Debtors under this Plan and the Cash, New Holding Company Common Stock, and other contracts, instruments, releases, agreements or documents to be delivered in connection with this Plan (each, a "Release Obligor"), shall have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged each Released Party from any Claim or Cause of Action existing as of the Effective Date arising from, based on or relating to, in whole or in part, the subject matter of, or the transaction or event giving rise to, the Claim or Trust Preferred Obligation of such Release Obligor, and any act, omission,

95

occurrence or event in any manner related to such subject matter, transaction or obligation; provided, however, that, (A) this Article 12.5 is subject to and limited by Article 12.10 of this plan; (B) this Article 12.5 shall not release any Released Party from any Cause of Action held by a governmental entity existing as of the Effective Date, based on (i) the Internal Revenue Code or other domestic state, city or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city or municipality, (iii) any criminal laws of the United States or any domestic state, city or municipality, (iv) the Exchange Act, the Securities Act, or other securities laws of the United States or any domestic state, city, or municipality, or(v) Sections 1104-1109 and 1342(d) of the Employee Retirement Income Security Act of 1974, as amended, or (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security; (C) this Article 12.5 shall not waive, impair or release any Claims or Causes of Action, if any, that any Release Obligor may have against any Released Party arising from a Trust Claim; and (D) this Article 12.5 shall not waive, impair or release any Securities Action, including, without limitation, all Subordinated Securities Claims, against any Released Party, if any.

(av)     **12.10**  Exclusions and Limitations on Exculpation, Indemnification, and Releases.  Notwithstanding anything in this Plan to the contrary, no provision of this Plan or the Confirmation Order, including, without limitation, any exculpation, indemnification or release provision, shall modify, release, or otherwise limit the liability of (i) any Person who is, or becomes, the subject of a Trust Claim (to the extent, but only to the extent, related to such Trust Claim), or (ii) any Person not specifically released hereunder, including, without limitation, any Person that is a co-obligor or joint tortfeasor of a Released Party or that is otherwise liable under theories of vicarious or other derivative liability, or (iii) any Person who is, or becomes, the subject of a Securities Action (to the extent, but only to the extent, related to such Securities Action); provided, however, that the Debtors and Reorganized Debtors shall not provide indemnification on account of (i) and (ii) above.

(aw)     **ARTICLE XIV(b)**     to adjudicate any and all adversary proceedings, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or, this Plan, or that were the subject of proceedings before the Bankruptcy Court prior to the Effective Date, proceedings to adjudicate the allowance of Disputed Claims and Disputed Interests, and all controversies and issues arising from or relating to any of the foregoing;

(ax)    **15.4    ~~Committees/Responsible Officer/Qualifying Real Estate~~ Committees.** Effective on the Effective Date, the Statutory Committees shall dissolve automatically, whereupon their members, professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to obligations arising under confidentiality agreements, joint interest agreements, and protective orders entered during the Chapter 11 Cases which shall remain in full force and effect according to their terms; applications for Professional Claims; requests for compensation and reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code for making a substantial contribution in any of the Chapter 11 Cases~~; and any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order~~. The Professionals retained by the Statutory Committees and the respective members thereof shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for services rendered in connection with any applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date including responding to or otherwise addressing any issues raised by any consultant to the Kmart Joint Fee Review Committee, and for the other duties and responsibilities of the Statutory Committees set forth in this Section (but only to the extent requested by the Debtors). This Section shall apply for all purposes and with respect to all Debtors and their respective Estates under the Plan~~, including with respect to any Debtor that owns Qualifying Real Estate that will remain in the Estate of such Debtor under the Plan until final disposition thereof; provided, however, that the Bankruptcy Court shall retain jurisdiction over the Responsible Officer and may impose such requirements with respect to the continued monitoring of the Estate of any such Debtor, including the imposition of supplemental fee application requirements with respect to any professionals of the Responsible Officer~~.

(ay)    **15.5    Post-Effective Date Committee.** (a) On the Effective Date, there shall be formed a Post-Effective Date Committee (the "Post-Effective Date Committee") with its duties limited to: overseeing the general unsecured claims reconciliation and settlement process conducted by or on behalf of the Reorganized Debtors~~; overseeing the disposition of Qualifying Real Estate as such disposition relates to the incurrence of cure rejection damages claims~~; formulating with the Reorganized Debtors appropriate procedures for the settlement of claims; overseeing (i) the establishment, (including the determination of the amount of New Holding Company Common Stock to be withheld) and (ii) the maintenance of, the Distribution Reserve; overseeing the distributions to the holders of Prepetition Note Claims and Trade Vendor/Lease Rejection Claims under the Plan; any matter relating to finalization of the Creditor Trust Agreement and the Trade Vendors' Lien

Program, including the filing and perfection of the mortgages granted to the Trade Vendors' Collateral Agent pursuant to Article 7.13 of the Plan and Exhibit J-1 and Exhibit J-2; responding to any motions or other actions seeking enforcement or implementation of the provisions of this Plan or the Confirmation Order; to appear before and be heard by the Bankruptcy Court and other courts of competent jurisdiction in connection with the above duties; and such other matters as may be agreed upon between the Reorganized Debtors and the Post-Effective Date Committee or specified in this Plan. The Post-Effective Date Committee shall consist of four (4) members, with three (3) of such members to be appointed by the Unsecured Creditors' Committee, and one (1) member to be appointed by the Financial Institutions' Committee, that may adopt by-laws governing its conduct. For so long as the claims reconciliation process shall continue, the Reorganized Debtors shall make regular reports to the Post-Effective Date Committee as and when the Reorganized Debtors and the Post-Effective Date Committee may reasonably agree upon. The Post-Effective Date Committee may employ, without further order of the Court, professionals to assist it in carrying out its duties as limited above, including any professionals retained in these Reorganization Cases, and the Reorganized Debtors shall pay the reasonable costs and expenses of the Post-Effective Date Committee, including reasonable professional fees, in the ordinary course without further order of the Court.

Dated: Chicago, Illinois
     April 22, 2003

                          Honorable Susan Pierson Sonderby
                          United States Bankruptcy Judge


John Wm. Butler, Jr.
J. Eric Ivester
Mark A. McDermott
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM (ILLINOIS)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606-1285
(312) 407-0700

99